UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSEPHINE MILLER                                JURY TRIAL DEMANDED
    Plaintiff

v.

HONORABLE PATRICK CARROLL, III,
    Official and Individual Capacities
    Defendant

## COMPLAINT

I.     PRELIMINARY STATEMENT

1.     This is an action for declaratory and injunctive relief to redress the deprivation by the Defendant of rights secured to the Plaintiff of procedural and substantive due process afforded by the Fourteenth Amendments to the United States Constitution, Article First, Sections 1, 11, and 12 of the Connecticut Constitution and Connecticut General Statutes, access to the state courts of Connecticut, 42 U.S.C. §§ 1981, 1983 and 1988.

II.     JURISDICTION

2.     Jurisdiction of this Court is invoked pursuant to the Provisions of Sections 1331, 1332, 1343 (3) and 1367 (a) of Title 28, and Sections 1983, 1981 and 1988 of Title 42 of the United States Code.

III.     VENUE

3.     Venue is proper in this Court because the acts alleged herein occurred within the State of Connecticut.

1

.IV.     STATEMENT OF FACTS

4.      Josephine S. Miller is a citizen and resident of the State of Connecticut. She was licensed to practice law in the state from on or about June 2004 until November 26, 2018 when she was suspended from the practice for a one-year period with conditions placed upon reinstatement.

5.      Defendant Honorable Patrick L. Carroll, III, was, and still is, the Chief Court Administrator of the Connecticut Judicial Branch. He is the chief policymaker and decision-maker of the Connecticut Judicial Branch.

6.      The Chief Court Administrative position is created by statute, C.G.S. Section 51-1b, and such person serves at the pleasure of the Chief Justice of the Connecticut Supreme Court.

7.      The Chief Court Administrator is the administrative director of the Connecticut Judicial Department and is responsible for the efficient operation of the department, the prompt disposition of cases, and the prompt and proper administration of judicial business.

8.      The processes by which attorneys licensed to practice law by the State of Connecticut are all governed by the Connecticut Judicial Branch.

9.      These processes include the Office of Chief Disciplinary Counsel, the Statewide Grievance Committee, Statewide Bar Counsel, the local grievance panels, reviewing subcommittees, Superior Court Judges, Probate Court Administrator, and Lawyers Concerned for Lawyers.

10. Judges of the Superior Court may become involved in the process by which attorneys are reprimanded, suspended, disbarred, otherwise disciplined, or reinstated to the practice of law in Connecticut.

11. The Office of Chief Disciplinary Counsel (hereafter referred to as "OCDC") is an administrative agency of the State of Connecticut Judicial Branch that is charged with, inter alia, enforcing the state statutes regarding attorney practice of law, investigating and monitoring attorney conduct.

12. The Statewide Grievance Committee (hereafter referred to as "SGC") is an administrative agency within the State of Connecticut Judicial Branch that is charged with, inter alia, enforcing the state statutes regarding attorney practice of law, and investigating and monitoring attorney conduct.

13. Members of the Statewide Grievance Committee, its local panels and standing committees are appointed by the judges of the Superior Court.

14. Lawyers Concerned for Lawyers Connecticut Inc. (hereafter referred to as "LCL")is a Connecticut non-profit corporation created under IRS Section 501(c)(3) and pursuant to C.G.S. Sec. 51-81d provides assistance to those in the Connecticut legal community who experience alcoholism, drug addiction, depression, anxiety, compulsive disorders (including gambling addiction), stress or other distress that impairs that individual's ability to function.  LCL "aids in the curtailment of malpractice claims and disciplinary complaints."

(a) By Practice Book Sec. 2-68A. The chief court administrator may enter into any contracts and take such other action as may be reasonably necessary to provide for crisis intervention and referral assistance to attorneys admitted to the practice of law in this

state who suffer from alcohol or other substance abuse problems or gambling problems, or who have behavioral health problems. (b) The crisis intervention and referral assistance shall be provided with the assistance of an advisory committee appointed by the chief court administrator.

    (b) LCL is funded in part by fees collected by the Client Security Fund, fees paid by all practicing attorneys in the state.

15.    In carrying out the important professional oversight responsibilities, the Office of Chief Disciplinary Counsel and Statewide Grievance Committee acts not as a third-party litigant, but as an arm of the court. See <u>Miller v. Appellate Court</u>, 320 Conn. 780 (in carrying out duty to investigate allegations of attorney misconduct, attorney disciplinary "bodies act as an arm of the court"; see also General Statutes § 51-90 et seq.)

16.    Defendant Patrick Carrol, as the chief policy maker for the Judicial Branch and its constituent agencies, is the ultimate policy maker for the OCDC, the SGC, the LCL, local grievance panels, standing committees, and Superior Court Judges when they are involved in processing matters of attorney discipline.

17.    At all times material mentioned in this lawsuit, Defendant acted under color of law of the United States Constitution and laws, and the laws and Constitution of the State of Connecticut. He is sued in his official capacity and individual capacity.

18.    Defendant is sued not in his capacity as a judge, but as the administrative policy and decision maker for the Connecticut Judicial Branch.

19.    A license to practice law is a vested property interest and disciplinary proceedings are adversary proceedings of a quasi-criminal nature.

20.     Because of the vested property right in his/her license to practice law, an attorney subject to discipline is entitled to due process of law, both procedural and substantive due process.

21.     At all times material herein, Defendant has established and maintained a policy and practice of refusing to provide substantive due process rights to attorneys who are charged with some violation of the Code of Professional Responsibility, or other conduct for which they may be disciplined.

22.     At all times material herein, Defendant has established and maintained a policy of providing procedural due process rights of notice in a nominal sense only.

23.     At all times material herein, Defendant has established and maintained a policy and practice of arbitrary and capricious discipline of attorneys and arbitrary and capricious application of rules regarding re-admission to the practice of law after discipline.

24.     Plaintiff was admitted to practice law in the State of Connecticut since on or about June 2004.  Plaintiff was first admitted to practice law in Michigan in 1980 and in Georgia in 1981.

25.     On November 26, 2018 Plaintiff was suspended from the practice of law by a Superior Court judge of the State of Connecticut Judicial Branch for a period of one year.

26.     The order of suspension placed certain conditions upon Plaintiff's reinstatement to the practice of law in Connecticut after the expiration of the one-year period.

27.     On December 30, 2019 Plaintiff filed an application for reinstatement to the practice of law and paid the required filing fee.

28. On January 7, 2020 notice of the application for reinstatement was caused to be published by the Connecticut Judicial Branch and the matter was referred to the administrative arm of the Judicial Branch for further handling.

29. It was not until November 10, 2020 that the Judicial Branch, acting through its constituent arms (i.e., the Office of Chief Disciplinary Counsel and the Statewide Grievance Committee), issued a report to the standing committee that will consider Plaintiff's application for reinstatement.

30. By statute, unless otherwise determined by a judicial officer, an application for reinstatement to practice must first be considered, and a recommendation made, by a standing committee of the Statewide grievance Committee.

31. After a hearing before the standing committee, an application for reinstatement to practice is then considered by a three-judge panel of superior court judges, to decide on whether reinstatement is appropriate.

32. As of the date of this complaint, there has been a failure and refusal to schedule the necessary hearing before the standing committee.

33. On October 30, 2020 Plaintiff made a written inquiry of Brian Staines, Chief Disciplinary Counsel, Elizabeth Rowe, Statewide Grievance Committee Bar Counsel, and Gary Friedle, Hartford Judicial District Standing Committee Chair, regarding the delay in scheduling a hearing on her application for reinstatement.

34. On October 30, 2020, Attorney Friedle responded that the " application was filed before the pandemic crisis came upon us. You know the reason why your case has been delayed along with many others. I will contact you as soon as we are advised that we can proceed. This is not a failure to proceed, it is an inability to do so."

35. On November 2, 2020 Attorney Rowe responded "My office was closed from March of 2020 until September 8, 2020 due to the COVID pandemic. The Rules Committee of the Superior Court waived deadlines in Practice Book Section 2-53 during this time. Thereafter, my office has lost three staff members due to retirement. The current priority of my office is to process grievance complaints and continue our regulatory work as possible. Due to the staffing shortage, it has been impossible for us to focus on preparing the report regarding your application for reinstatement."

36. Attorney Rowe specifically averred that "[t]he Statewide Grievance Committee is not currently holding public hearings at this time. In light of these scarce judicial resources, my office is doing its best to prepare a diligent report and the Hartford Standing Committee has indicated a preference for receiving that report prior to scheduling a hearing."

37. Plaintiff's application for reinstatement had been filed for ten months before the required report was issued.

38. By contrast, notice was given of an application for reinstatement that was filed seven months after Plaintiff's (i.e., on July 17, 2020) for a Caucasian attorney whose effective time of suspension for conviction for crime was twenty months (during his federal incarceration) *and* three years of supervised release for multiple federal crimes.

39. Exactly two months after notice of the Caucasian attorney's application for reinstatement, a notice was issued on September 17, 2020 scheduling a hearing for October 23, 2020 before the local panel (albeit the Fairfield Judicial District local panel).

40. At the time of this notice of scheduling of the hearing before the standing committee, the Caucasian attorney was notified that a link would be provided regarding how to access the hearing. Upon information and belief, this link referred to the virtual hearing technology that the Judicial Branch has been utilizing because of the COVID19 pandemic.

41. At the time of scheduling of the hearing for this attorney, no report had been issued regarding this attorney's application for reinstatement.

42. It was not until October 20, 2020 that the Statewide Grievance Committee issued its report regarding the application for reinstatement pursuant to Practice Book § 2-53 for this Caucasian attorney.

43. The October 23, 2020 hearing before the standing committee did not proceed as had been scheduled one month earlier, *only* because counsel for the attorney sought a continuance to prepare to respond the committee report that had been issued only three days earlier.

44. No reference was made to the availability or lack of availability of virtual hearing space for conducting the hearing for this Caucasian male attorney.

45. On November 18, 2020, after a written inquiry from Plaintiff, Attorney Freidle, stated, "Late Tuesday afternoon November 17th, I had a telephone conversation with the committee's Superior Court Liaison officer, Attorney Beth Willett. I have learned the following:

   1. No in person hearings are currently being conducted. No date has been set as to when that may change.

2. The request of the Committee to conduct a virtual hearing, subject to you being comfortable with that, has been forwarded to the appropriate department which funds such requests.

3. The funding department has not yet approved our request.

4. Even if the request is approved it would not appear that we would be able to conduct a hearing until at the very least February 2021.

5. I will advise you as soon as I have further information."

46. On November 19, 2020, after Plaintiff was directed by Attorney Freidle as to whom to address further inquiries regarding the failure to schedule her hearing before the standing committee, the following written response was given by Attorney Beth Willett.

47. Attorney Willett wrote, "Let me explain to you the current status of your request. I received from Attorney Friedle an email last week on 11/10 that requested that I help to set up time in the courthouse. After receiving this email, I sent the request to Judge Sheridan, who is the presiding and administrative judge in Hartford. Once he received it, he informed me that due the fact that we are not allowing matters to occur in person and that it would be likely need to be scheduled using the remote/virtual courtrooms.:

48. "Judge Sheridan also said since this was a nonjudicial use of a remote/virtual courtroom that he would have to get permission to use this system. Currently the request for permission is still pending. Please note that the permission is not pending with the "funding department" as Attorney Friedle stated in his email to you. I believe that he stated this due to misunderstanding what I said to him."

49. During the same time that Plaintiff has been denied a scheduled hearing before the standing committee on her application for re-admission, a hearing was scheduled for the Caucasian attorney.

50. "Lastly in regards to your questions about item #2 about the timeframe of scheduling matters. Attorney Friedle asked me when we were scheduling matters I told him that currently for a matter that is one day that I am scheduling in February 2021."

51. Upon information and belief, it was not until on or about August 27, 2020, when an investigator for the Statewide Grievance Committee contacted a volunteer organization, that the Judicial Branch began its investigation of her application for reinstatement. The requested information was supplied to Respondent by September 4, 2020.

52. By failing and refusing to complete the required report to the standing committee for Plaintiff, while completing such report for the Caucasian attorney, Defendant's policy of racially discriminatory application of the attorney discipline rules has provided a prima facia evidence of a violation of Section 1983.

53. By failing and refusing to schedule a hearing at even the initial stage of the re-admission process, while scheduling such hearing to a Caucasian attorney, Defendant's policy of racially discriminatory application of the attorney discipline rules has provided prima facia evidence of a violation of Section 1983.

54. In the joint report of the OCDC and the SGC, Plaintiff was excoriated for "slandering the court system in Connecticut". The accusation of "slander" was made regarding Plaintiff's claims of racial discrimination in the process of attorney discipline in Connecticut.

55. In its joint report, the OCDC and the SGC concluded that it was "detrimental to the integrity of the bar, the court system and subversive to the public interest" to permit Plaintiff to "slander the court system".

56. In its joint report, the OCDC and the SGC set forth the requirement that to be re-admitted to practice law in Connecticut, Plaintiff must "accept that in the future she will comport herself within the acceptable bounds of zealous advocacy, rather than defensively accuse others of racial bias, absent compelling evidence of the allegation".

57. In its joint report, the OCDC and the SGC set forth the requirement that to be re-admitted to practice law in Connecticut, Plaintiff must "demonstrate that she is willing to work within the system to effectuate change rather than merely attack it."

58. The only actions that have been taken by Plaintiff to effectuate change have been to file administrative and court cases or appeals regarding her claims of racially discriminatory attorney discipline and treatment in Connecticut.

59. In its joint report, the OCDC and the SGC set forth the requirement that to be re-admitted to practice law in Connecticut, Plaintiff must state whether she intends to "apply for re-instatement to the appellate court and accept the discipline imposed by that court".

60. The December 9, 2014 order of the Connecticut Appellate Court suspended Plaintiff for a six-month period, through June 9, 2015, set forth various conditions and held that "upon the filing and granting of a motion for re-instatement Attorney Josephine Smalls Miller may resume the practice of law before the Appellate Court if she is otherwise qualified to practice law in the courts of this state."

61.     The Order of the Connecticut Appellate Court did not *require* that Plaintiff seek re-admission to practice before that court.  In fact, many attorneys in Connecticut do not engage in appellate practice.

62.     In its joint report, the OCDC and the SGC set forth the requirement that to be re-admitted to practice law in Connecticut, Plaintiff must state whether she "accepts the discipline imposed by that [Appellate] Court."  The discipline (i.e., six-month suspension) was imposed and completed more than five years ago.  There is no further discipline to be imposed, or accepted, by Plaintiff.

63.     In its joint report, the OCDC and the SGC set forth the requirement that to be re-admitted to practice law in Connecticut, Plaintiff must state "[g]oing forward, if the Applicant disagrees with a ruling from the court how will she comport herself within the bounds of zealous advocacy."

64.     In the decision of the Superior Court judge dated November 26, 2018, the court stated that the "affirmative defenses …constitute an independent cause of action through which the Respondent can seek specific damages or other relief".

65.     In the decision of the Superior Court judge dated November 26, 2018, the court stated, "it is clear that even if Respondent's special defenses are *not viable in the presentment hearing*, she will not be prejudiced if precluded from pursuing them …in federal court…the court's conclusion that her "affirmative defenses" are not proper special defenses."[Emphasis added]

66.     In the decision of the Superior Court judge dated November 26, 2018, the court reiterated that "again, the defenses raised by the respondent are *not properly before the court* in this [presentment] proceeding…" [Emphasis added]

67.     Plaintiff appealed the decision of the Superior Court judge to the Connecticut Appellate Court on December 13, 2018.  The matter was transferred to the Supreme Court which delivered a decision on April 27, 2020.

68.     On January 23, 2020, Plaintiff argued the appeal before a five-judge panel of the court.  Plaintiff was present for the oral argument of the case heard by the court just prior to hers, the argument proceeded as normal.  During the entire thirty (30) minutes allotted to Plaintiff for oral argument, not a single question or comment was raised by any member of the court regarding Plaintiff's claims.

69.     When the decision of the Supreme Court was issued on April 27, 2020, the court stated that "the trial court correctly concluded that her claims of racial discrimination and retaliation were *not properly raised* in the presentment hearing." [Emphasis added]

70.     The decision of the Supreme Court, issued on April 27, 2020, held that Plaintiff's due process rights were not violated by the refusal of the trial judge to respond to any of her requests by way of a Motion for Articulation of the reasons for the decision to suspend her.  A request for review to the Appellate Court requiring the articulation was also denied the relief requested.

71.     By the refusal of an articulation, the Judicial Branch has not been required to state with any particularity the bases for the decisions related to Plaintiff's suspension.

72. The policy as promulgated and enforced by Defendant permits a wide variance in the terms under which attorneys are disciplined and retuned to the practice of law after discipline has been imposed.

73. One attorney, Caucasian, admitted to at least a seven-year practice of submitting falsified personal injury settlement statements to the State of Connecticut Department of Administrative Services, resulting in a $260,000 underpayment on statutory liens, and receive only a nine-month suspension from practice. By imposing less than a twelve-month suspension, this attorney was not required to seek re-admission but was automatically restored to practice after the nine months suspension expired.

74. A retired judge of the Superior Court, who had been responsible for many attorney presentment decisions for the Hartford Judicial District, in December 2019 testified under oath: "I found worse cases with less punishment and I'm sure you're aware of those cases. I found worse cases with different recommendations from the Disciplinary Counsel's Office, not Mr. Staines himself, but from that office. I don't know that there is a logical explanation for that, I understand the need for consistency and I understand the desire to be uniform, but Judge, people have done much worse things and received much less punishment than [attorney's] going to take no matter what you do, and I think that point has to be made."

75. …"I would ask you, Judge, to make the, specifically ask you, to make the punishment more symbolic than punitive at this point." … "I know it kills him to face the suspension, and the idea of him reapplying, Judge, I can't imagine that a more thorough investigation will be done to [attorney] than has already been done. There's, frankly,

there's no need for that. So, I would hope that you would consider making the suspension symbolic at this point and recognize the fact that [attorney] is being –- has been punished, and is being punished, will be punished and is being punished right now. Thank you very much, Judge."

76. By contrast, attorneys such as Plaintiff are required to, inter alia, pay a $1,000 fee, re-take the Multi-state Professional Responsibility Exam, [MPRE} submit to a hearing before a panel of attorneys, and submit to a hearing before a panel of three judges.

77. Defendant is well aware of the discriminatory and retaliatory impact of his policies, having been placed on notice through the factual statements in multiple legal pleadings in state and federal court by Plaintiff and others, including but not limited to, <u>Miller v. Carrasquilla, et al</u> (3:15CV111I(MPS), <u>Johnson, et al. v. Carrasquilla</u> (3:17CV1429 (MPS), <u>Miller v. Connecticut Appellate Court</u>, 320 Conn. 759 (2016); <u>Cimmino v. Marcoccia</u>, 332 Conn. 510 (2019); <u>Office of Chief Disciplinary Counsel v. Josephine Smalls Miller</u> (SC 20390).

78. By written communication from counsel for the Statewide Grievance Committee, on April 16, 2020 Plaintiff was informed that by virtue of the COVID19 pandemic, "Judicial Branch is only performing Priority 1 business at this time and timeframes in Practice Book Section 2-53 were suspended at an emergency meeting of the rules committee. "The order states: suspension of existing rules and the adoption of the new rule shall remain in effect for the duration of the declared emergency or until such time, as soon as practicable, as a meeting of the Superior Court Judges can be convened to consider a vote on the changes".

79. Defendant has suspended the timeframes in Practice Book Section 2-53 regarding Plaintiff but simultaneously refusing to suspend the same timeframes as regards the Caucasian attorney.

80. State administrative and Court remedies have been made unavailable to attorneys such as Plaintiff who make legal claims of constitutional violations in the discipline process, rendering a nominally available procedure unavailable as a matter of fact.

**COUNT ONE:** **DENIAL OF EQUALPROTECTION OF THE LAWS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. SECTION 1983 (Race Discrimination)**

1-80   Paragraphs 1-80 Are hereby incorporated by reference and made a part of this Count One.

81. By the conduct alleged in paragraphs 1-80, Defendant has violated Plaintiff's right to be free of racially discriminatory treatment in violation of the 14th Amendment.

82. Plaintiff has been damaged thereby.

**COUNT TWO:** **DENIAL OF EQUALPROTECTION OF THE LAWS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. SECTION 1983 (Procedural Due Process Violation)**

1-80   Paragraphs 1-80 Are hereby incorporated by reference and made a part of this Count Two.

81. By the conduct alleged in paragraphs 1-80, Defendant has violated Plaintiff's right to be free of arbitrary and capricious, and selective enforcement of procedural rules in violation of the 14th Amendment.

82. Plaintiff has been damaged thereby.

**COUNT THREE:** **VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. SECTION 1983 RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY**

1-80   Paragraphs 1-80 Are hereby incorporated by reference and made a part of this Count Three.

81. By the conduct alleged in paragraphs 1-80, Defendant has violated Plaintiff's right to be free of retaliatory treatment because of her engaging in protected activity, because of her civil rights practice, and because of her speaking out on issues of discrimination within the Judicial Branch, violation of the 14th Amendment.

82. Plaintiff has been damaged thereby.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in her favor against Defendant, and seeks relief for:

1. An injunction directing Defendant to immediately cease and desist from refusing to re-admit Plaintiff to the practice of law, and to cease and desist from all actions intended to impose discriminatory or retaliatory conditions upon her re-instatement;

2. Compensatory damages (as to individual capacity liability only);

3. An award of costs and expenses, including reasonable attorneys' fees under 42 U.S.C. § 1988; and

4. Such other and further relief as this Court deems appropriate.

                              BY THE PLAINTIFF

                              */s/Josephine S. Miller*
                              Josephine S. Miller, Pro Se
                              152 Deer Hill Avenue, Suite 302
                              Danbury, CT   06810
                              Tel: (203) 512-2795