## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Josephine Smalls Miller | : | |
| Plaintiff, | : | |
| | : | No. 3:21-cv-14-VLB |
| v. | : | |
| | : | |
| Honorable Patrick Carroll, III, | : | May 17, 2021 |
| Defendant. | | |

### DECISION AND ORDER GRANTING
### DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [DKT. 19]

Josephine Miller ("Miller"), an attorney suspended from the practice of law in the state of Connecticut, brings this lawsuit against Judge Patrick Carroll, III ("Judge Carroll"), the Chief Court Administrator for the State of Connecticut Judicial Branch. Miller generally alleges that Judge Carroll violated her right to be free of racially discriminatory treatment, her right to procedural due process, and her right to be free of retaliatory treatment. [Second Amended Complaint ("SAC"), Dkt. 17]. The allegations in the SAC focus primarily on Miller's application for reinstatement to the practice of law in the state of Connecticut and the delays in the processing of that application. Miller claims that the processing delay is a product of racial discrimination and a product of retaliation against her for her civil rights practice and speaking on issues of discrimination in the Connecticut Judicial Branch. The only defendant in this case is Judge Carroll. The SAC seeks two primary forms of relief: (1) an injunction directing Judge Carroll to immediately cease and desist (a) from refusing to re-admit Miller to the practice of law and (b) from all actions intended to impose discriminatory or retaliatory conditions upon her reinstatement and (2) monetary damages pursuant to 42 U.S.C. § 1983.

1

Before the Court is Judge Carroll's motion to dismiss the SAC in which he argues (1) the SAC should be dismissed pursuant to the *Younger* abstention doctrine, (2) any official capacity claims are barred under the Eleventh Amendment, (3) he is entitled to qualified immunity for any individual capacity claims, and (4) the SAC fails to state a claim against him in his individual capacity.  [Mot. to Dismiss, Dkt. 19].  Plaintiff objects.  [Opp., Dkt. 22].  The Court GRANTS the motion to dismiss because (1) the court lacks subject matter jurisdiction over the claims for injunctive relief and (2) the claims for monetary damages fail to state a claim upon which relief can be granted.

## I.       STANDARD OF REVIEW

Judge Carroll seeks dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(1) allows a party to assert by motion a defense that the court lacks subject matter jurisdiction.  Rule 12(b)(6) allows a party to assert by motion a defense that the complaint fails to state a claim upon which relief can be granted.   Rules 12(b)(1) and 12(b)(6) have similar legal standards.  *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *abrogated on other grounds recognized by Am. Psych. Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016).  There are recognized differences when factual disputes exist, when determining whether dismissal should be with or without prejudice, and in which party bears the burden of proof.  *See United States ex rel. Daugherty v. Tiversa Holding Corp.*, 342 F. Supp. 3d 418, 425 n.1 (S.D.N.Y. 2018).

When ruling on a motion to dismiss pursuant to Rule 12(b)(1), the "court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016).  When facts are disputed, the court may refer "to evidence outside the pleadings, such as affidavits and if necessary, hold an evidentiary hearing." *Id.*  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000).

"To survive [a Rule 12(b)(6)] motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Not all allegations in a complaint are entitled to the presumption of truth. *Id.*  Conclusory allegations that are no more than "legal conclusions" or "[t]hreadbare recitals of elements of a cause of action" are not entitled to the presumption of truth. *Id.*  If after considering the well-pled factual allegations the court finds that the complaint does not raise a plausible claim for relief, the court should dismiss the case. *Id.* at 679.  The plausibility standard is more than mere possibility of misconduct. *Id.*  Further, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."

3

*Rivera v. Westchester Cty.*, 488 F. Supp. 3d 70, 75–76 (S.D.N.Y. 2020) (citing to *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)).  The defendant bears the burden of proof on a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014).

The Supreme Court's decision in *Iqbal* elucidates the meaning of conclusory allegations of discriminatory policymaking and policy enforcement.  556 U.S. 662.  In *Iqbal*, the respondent (a Muslim citizen of Pakistan) sued the petitioners (numerous federal officials including Ashcroft, former Attorney General of the United States and Mueller, the then-Director of the Federal Bureau of Investigations) alleging the petitioners adopted unconstitutional policy that subjects the respondent to harsh conditions of confinement on account of his race, religion, or national origin.  556 U.S. at 666.  The Court held that several of the allegations made by the respondent in his complaint were conclusory and thus not entitled to the presumption of truth.  *Id.* at 680–81.  These allegations included "that petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him,]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest' . . . Ashcroft was the 'principal architect' of this invidious policy . . . and that Mueller was 'instrumental' in adopt[ing] and executing it . . . ."  *Id.*  These accusations were deemed 'conclusory' and not entitled to the presumption of truth.  *Id.* at 681.  The Court ultimately concluded that the complaint failed to plead sufficient facts to state a claim for purposeful and unlawful discrimination against

the petitioners and remanded to the circuit court for a determination of whether remand to the district court was necessary.  *Id.* at 687.

Miller is self-represented (*pro se*) in these proceedings.  Ordinarily, courts liberally construe a complaint filed by a *pro se* party to raise the strongest arguments they suggest.  *See e.g., McCray v. Lee*, 963 F.3d 110, 116–17 (2d Cir. 2020).  "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006).  Miller is not entitled to liberal construction because she has been a member of the bar since June 2004 and litigated many cases in both state and federal court for many years prior to her suspension.  *See Harbulack v. Suffolk County*, 654 F.2d 194, 198 (2d Cir. 1981) (finding that a practicing lawyer is not entitled to liberal construction).  With that said, the Federal Rules of Civil Procedure counsel courts to construe pleadings "so as to do justice."  Fed. R. Civ. P. 8(e).  Thus, the Court will address the claims and arguments raised by Miller "so as to do justice."

II.    BACKGROUND

A. Defendant and Non-Defendant Roles

Judge Carroll is the only defendant in this case and he is being sued in both his official capacity as Chief Court Administrator and in his individual capacity for conduct relating to his role as Chief Court Administrator.  Connecticut statutes create the office and duties of the Chief Court Administrator.  Conn. Gen. Stat. §

51-5a.   The Chief Court Administrator is appointed by the Chief Justice of the Connecticut Supreme Court and, in general terms, is the chief administrative officer of the Connecticut Judicial Department.   Conn. Gen. Stat. §§ 51-1b(b), 51-5a.   The Office of the Chief Court Administrator, which operates under the supervision and direction of the Chief Court Administrator, conducts activities such as auditing bills, maintaining account records, preparing and submitting a budget, acting as a secretary at any meetings for the judicial department, and more administrative acts.   Conn. Gen. Stat. § 51-9.

Though Judge Carroll is the only defendant, the SAC includes allegations of wrongdoing at the hands of various disciplinary authorities involved in the processing of Miller's application for reinstatement.   First, the SAC raises claims relating to the Hartford County standing committee on recommendations for admission ("SCRA"). There is an SCRA in each of the eight Connecticut counties. Conn. Prac. Bk. § 2-12.   Each SCRA is made up of at least 3, but not more than 7, members of the bar of the county in which it sits.   *Id.*   The members of the SCRA are appointed by the judges of the Superior Court.   *Id.*   Second is the Statewide Grievance Counsel ("SGC"), which is a group of twenty-one attorneys and laypersons all appointed by the Judges of the Superior Court.   Conn. Prac. Bk.   § 2-33.   Last is the Office of Chief Disciplinary Counsel ("OCDC"), headed by an attorney also appointed by the judges of the Superior Court.   Conn. Prac. Bk. § 2-34A.   To summarize briefly, the non-parties mentioned by Miller in the SAC are all appointed by the judges of the Superior Court as provided for under the Connecticut Practice Book.   Neither the Connecticut statues nor the Practice Book

confer to the Chief Court Administrator appointment or supervisory authority over these entities.

**B.** <u>Overview of Connecticut Superior Court Rules on Attorney Reinstatement After Suspension</u>

Connecticut law authorizes the judges of Connecticut courts to adopt and promulgate rules of practice and procedure. Conn. Gen. Stat. § 51-14. They have done so and have published the Connecticut Practice Book. These rules of Superior Court practice and procedure are voted upon by the judges of the Superior Court. Conn. Prac. Bk. § 1-9. The Connecticut Practice Book contains, among many other things, the process and qualifications for admission to the bar, attorney discipline, and reinstatement following suspension from the practice of law. Conn. Prac. Bk. § 2.

The allegations in the SAC center on Miller's efforts to seek reinstatement following her one-year suspension from the practice of law in the state of Connecticut. The Connecticut Superior Court Civil Rules pertaining to reinstatement to the bar prescribe and informs the Courts analysis of the sufficiency of the claims asserted. Connecticut Practice Book § 2-53 governs "Reinstatement After Suspension, Disbarment or Resignation." Subsection (a) provides that attorneys who have been suspended for a period of one year or more shall be required to apply for reinstatement, unless ordered otherwise. Conn. Prac. Bk. § 2-53(a). Subsection (d) lists the general requirements that must be satisfied prior to seeking reinstatement including, among other things, that the "applicant pass the Multistate Professional Responsibility Examination (MPRE) not more than six months prior to filing the application" and satisfy the conditions imposed by

the disciplinary suspension order unless the court orders otherwise.  Conn. Prac. Bk. § 2-53(d).  Subsection (e) provides that the application for reinstatement must be filed in the appropriate Superior Court, on a form approved by the Office of the Chief Court Administrator, and under oath.  Conn. Prac. Bk. § 2-53(e).

After the application for reinstatement is properly filed with the Superior Court, the clerk of that court is to refer the matter to the Chief Justice of the Connecticut Supreme Court or its designee.  Conn. Prac. Bk. § 2-53(f).  The Chief Justice or its designee is then required to refer the matter to a SCRA.  *Id.*

After the application for reinstatement is referred to an SCRA, the SGC and OCDC are required to file a report with the applicable SCRA relating to the reinstatement application.  Conn. Prac. Bk.  § 2-53(h).   The SGC and OCDC report is, under ordinary circumstances, due within 60 days of the applications referral to the SCRA.  Conn. Prac. Bk. § 2-53(h).

The Connecticut Practice Book also requires that he SCRA investigate and hold a hearing on an application for reinstatement referred.   Conn. Prac. Bk. § 2-53(i).  Thereafter, the SCRA is required to render a report with its recommendations to the court.  *Id.*  The SCRA is also required to provide to the court its findings of facts and conclusions.  Conn. Prac. Bk. § 2-53(j).  The Practice Book ordinarily requires the SCRA's report and recommendation be submitted within 180 days of the initial referral.  *Id.*

Following receipt of the SCRA report and recommendation, the court shall inform the Chief Justice of the pending application and the Chief Justice shall designate two other judges of the Superior Court to sit with the presiding judge,

making a three-judge panel. § 2-53(l). The majority of the panel will decide whether the application for reinstatement should be granted. *Id.* Aside from approving the application for reinstatement, the Office of the Chief Court Administrator plays no role in the reinstatement of attorneys suspended from the practice of law.

The deadlines for the SGC and OCDC's report to the SCRA and the SCRA's report and recommendation to the Superior Court were indefinitely suspended on March 24, 2021. *See Emergency Meeting of the Rules Committee of the Superior Court pursuant to Section 1-9B of the CT Practice Book*, Jud.Ct.Gov, available at: https://jud.ct.gov/Committees/rules/meeting.htm. The suspension of certain Practice Book deadlines was authorized by the Rules Committee of the Superior Court at a meeting ostensibly convened by the Chief Court Administrator. The Rules Committee was exercising authority under Connecticut Practice Book § 1-9B, which authorizes the Rules Committee to suspend Practice Book rules during the existence of a public health emergency declared by the Governor of Connecticut.

The suspension of the Connecticut Practice Book deadlines followed the Governor's March 10, 2020 "Declaration of Public Health and Civil Preparedness Emergencies."[1] The Governor's declaration states:

> In response to the global pandemic of COVID 19 disease associated with a novel coronavirus that is currently affecting multiple countries and states and has resulted in the spread of infections in Connecticut and surrounding states, as well as resulting shortages of personal protective equipment and other supplies that could jeopardize public

---

[1] *Declaration of Public Health and Civil Preparedness Emergencies,* Ned Lamont, Governor of State of Connecticut (Mar. 10, 2020) available at: https://portal.ct.gov/-/media/Office-of-the-Governor/News/20200310-declaration-of-civil-preparedness-and-public-health-emergency.pdf.

safety and civil preparedness, and in order to provide me and other appropriate officials with all authorities necessary to limit the spread of the COVID 19 coronavirus and protect public safety within the State of Connecticut, I hereby declare a public health emergency and civil preparedness emergency throughout the State, pursuant to Sections 19a-131 a and 28-9 of the Connecticut General Statutes. Such public health emergency and civil preparedness emergency shall remain in effect through September 9th, 2020, unless terminated earlier by me.[2]

The next day, the World Health Organization declared COVID-19 a global pandemic; at the time there were 118,000 cases in 114 countries, and 4,291 deaths.[3]   On March 13, 2020, the President of the United States declared a national state of emergency to slow the infectivity rate and treat those affected by COVID-19.[4]  As of March 24, 2021, when the Rules Committee met and voted to suspend certain Practice Book deadlines, in the United States 56,109 cases of COVID-19 were reported and 753 people died from COVID-19.[5]   The Governor of Connecticut has extended the declaration of public health emergency four times, most recently on April 19, 2021.[6] On the date this case was filed the State of Connecticut was still subject to the public health declaration.

---

[2] *Id.*

[3] *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19*, World Health Organization (Mar. 11, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[4] *See Presidential Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 FR 15337 (Mar. 13, 2020).

[5] *Trends in Number of COVID-19 Cases and Deaths in the US Reported to CDC, by State/Territory*, CDC.Gov, available at: https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases (last visited Apr. 26, 2021).

[6] *Declaration of Public Health and Civil Preparedness Emergencies,* Ned Lamont, Governor of Connecticut (Apr. 19, 2021) available at: https://portal.ct.gov/-/media/Office-of-the-Governor/News/2021/20210419-COVID-emergency-declaration.pdf.

C. <u>Allegations from the Second Amended Complaint</u>

The allegations outlined below are taken from the SAC, documents incorporated and referenced therein, and documents to which the Court can take judicial notice of. There is largely no dispute over the factual allegations raised in the SAC. Neither party has sought an evidentiary hearing, nor does the Court believe that an evidentiary hearing would be necessary.

Attorney Miller is African-American. SAC at ¶4. In June 2004, Miller was admitted to the Connecticut bar. *Id.* In March 2017, the OCDC filed a Presentment of Attorney for Misconduct[7] ("Presentment") against Miller to the Connecticut Superior Court. *Office of Chief Disciplinary Counsel v. Miller*, No. DBD-CV17-6022075-S, Dkt. 100.30 (Conn. Super. Ct. Nov. 26, 2018). On November 26, 2018, the Court suspended Miller from the practice of law in Connecticut for one year. *Id.* at Dkt. 131.05. The suspension order imposed required Miller: to comply with all terms and conditions of Connecticut Practice Book § 2-47B, which imposes restrictions on the activities of deactivated attorneys; to comply with all terms and conditions under Connecticut Practice Book § 2-53 in the event she seeks reinstatement to the Connecticut bar following her period of suspension; satisfy any Connecticut bar requirements and must be otherwise in good standing; agree to be subject to mentorship by a qualified member of the bar for a period of one year; and attend Connecticut Bar Association approved continuing legal education

---

[7] A presentment, as contemplated under the Connecticut Practice Book, is generally a complaint brought by the OCDC accusing an attorney of misconduct. *See* Conn. Prac. Bk. § 2-47. The Connecticut Superior Court Judge presiding over the matter is to conduct a hearing on the allegations and either dismiss the complaint or impose discipline. *Id.*

courses in both legal and law office management.  *Id.* at Dkt. 131.05.  Connecticut Practice Book § 2-53(d) requires attorney seeking reinstatement to have passed the MPRE not more than six months prior to the filing of the application.  In April 2020, the Connecticut Supreme Court affirmed this decision.  *Office of Chief Disciplinary Counsel v. Miller*, 335 Conn. 474, 480 (2020).    Because Attorney Miller's reinstatement was conditional, her suspension was until the later of November 26, 2019 or the date on which she established she satisfied all the conditions precedent to reinstatement.

On December 30, 2019, Miller filed an application for reinstatement.  SAC at ¶ 27; *Office of Chief Disciplinary Counsel v. Miller*, No. DBD-CV17-6022075-S, Dkt. 147.00.  Miller's application for reinstatement was not accompanied by proof that she satisfied the condition that she passed the MPRE.  *Id.*  The following week, the application for reinstatement was referred "to the administrative arm of the Judicial Branch for further handling."  SAC at ¶ 28.  The SAC does not articulate to where it was referred, but based on other allegations in the SAC, the Court infers it was referred to the Hartford County SCRA.  The SGC filed a motion to dismiss the application for reinstatement on the basis that Attorney Miller failed to present proof that she satisfied the condition that she passed the MPRE.  *Office of Chief Disciplinary Counsel v. Miller*, No. DBD-CV17-6022075-S, Dkt. 152.00. Miller later filed two motions for waiver of the requirement on February 24, 2020 and March 16, 2020. *Id.* at Dkt. 154.00, 156.00.  Miller ultimately filed proof that she passed the MPRE on April 13, 2020, nearly a month after the March 24, 2020 Rules Committee decision suspending deadlines relating to the SGC and OCDC's report and the

SCRA's report and recommendation. *Id.* at Dkt. 158.00. The SGC's motion to dismiss was withdrawn on April 16, 2020. *Id.* at Dkt. 159.00.

On October 20, 2020, which is approximately six months after the SGC withdrew the motion to dismiss, the Plaintiff wrote to representatives of the OCDC, SGC, and Hartford SCRA relating to the delay in scheduling her hearing before the SCRA. SAC at ¶ 33. A representative of the Hartford SCRA responded that day indicating that the application for reinstatement was filed prior to the COVID-19 pandemic and that Miller will be contacted "as soon as [the standing committee] are advised that [they] can proceed." *Id.* at ¶ 34. The response further indicated that "This is not a failure to proceed, it is an inability to do so." *Id.*

Following the Governor's March 2020 declaration of a public health emergency caused by the spread of COVID-19, the Connecticut Superior Court began closing court locations as early as March 18, 2020.[8] As of the date of this decision, the pandemic is still ongoing. Just recently, as of April 19, 2021, the Governor of Connecticut announced that all pandemic restrictions, except for the mask mandate will be rescinded on May 15, 2021, more than 14 months since the original declaration of public health emergency.[9]

On November 2, 2020, a representative from the SGC indicated that the SGC office was closed between March 2020 and September 2020 due to the COVID-19

---

[8] ***COVID-19 Update: Court business will be conducted in 15 locations only***, **Jud.Ct.Gov, available at: https://jud.ct.gov/HomePDFs/JudgeCarrollStatement.pdf (Mar. 18, 2020).**
[9] **Press Release, The Office of Governor Ned Lamont, (Apr. 19, 2021), available at: https://portal.ct.gov/Office-of-the-Governor/News/Press-Releases/2021/04-2021/Governor-Lamont-Coronavirus-Update-April-19.**

pandemic, deadlines under the Practice Book have been waived, she is experiencing a staff shortage due to retirements, and the priority is to handle grievance complaints.  *Id.* at ¶ 35.  The SGC also indicated that "[d]ue to the staffing shortage, it has been impossible for us to focus on preparing the report regarding your application for reinstatement."  *Id.*  On November 10, 2020, the OCDC and SGC issued a report to the standing committee on the application of reinstatement.  SAC at ¶ 29.

On November 18, 2020, a representative of the Hartford SCRA emailed Miller indicating that no in-person hearings were currently being conducted, a request for a virtual hearing was made to the appropriate judicial department, and if the request is approved the earliest they could have a virtual hearing would be February 2021.  SAC at ¶ 45.  On November 19, 2020, another representative of the Hartford SCRA reiterated that they are currently awaiting approval to conduct a virtual hearing.  SAC at ¶¶ 47–48.  As of the SAC, which was filed early February 2021, Miller still has not had her hearing before the Hartford SCRA.  SAC at ¶ 32.

On December 12, 2020, Miller filed a complaint alleging discrimination and retaliation against "the Connecticut Judicial Branch" with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and notified the OCDC, SGC, and Hartford SCRA.  SAC at ¶¶ 81–82.  On January 6, 2021, this suit was brought.  SAC at ¶ 83.

On February 9, 2021, the Hartford SCRA filed a motion for advice from the court before the Superior Court in the presentment action against the Plaintiff.  SAC at ¶ 84.  The motion requests advice on how to proceed in light of the federal

lawsuit, particularly whether the reinstatement proceedings should be stayed while this suit is ongoing. *Id.* at ¶ 85.

### D. Allegations Against Judge Carroll

The SAC was brought against only Judge Carroll in both his official and individual capacity. SAC at ¶ 17. Miller lodges the following allegations against Judge Carroll:

- "Defendant Patrick Carrol, as the chief policy maker for the Judicial Branch and its constituent agencies, is the ultimate policy maker for the OCDC, the SGC, the LCL, local grievance panels, standing committees, and Superior Court Judges when they are involved in processing matters of attorney discipline." SAC at ¶ 16.

- "At all times material herein, Defendant has established and maintained a policy and practice of refusing to provide substantive due process rights to attorneys who are charged with some violation of the Code of Professional Responsibility, or other conduct for which they may be disciplined." SAC at ¶ 21.

- "At all times material herein, Defendant has established and maintained a policy of providing procedural due process rights of notice in a nominal sense only." SAC at ¶ 22.

- "At all times material herein, Defendant has established and maintained a policy and practice of arbitrary and capricious discipline of attorneys and arbitrary and capricious application of rules regarding re-admission to the practice of law after discipline." SAC at ¶ 23.

- "Defendant is well aware of the discriminatory and retaliatory impact of his policies, having been placed on notice through the factual statements in multiple legal pleadings in state and federal court by Plaintiff and others, including but not limited to, Miller v. Carrasquilla, et al (3:15CV111l(MPS), Johnson, et al. v. Carrasquilla (3:17CV1429 (MPS), Miller v. Connecticut Appellate Court, 320 Conn. 759 (2016); Cimmino v. Marcoccia, 332 Conn. 510 (2019); Office of Chief Disciplinary Counsel v. Josephine Smalls Miller (SC 20390)." SAC at ¶ 77.

- "Defendant has suspended the timeframes in Practice Book Section 2-53 regarding Plaintiff but simultaneously refused to suspend the same timeframes as regards the Caucasian attorney." SAC at ¶ 79.

The SAC does not allege any specific facts in support of the conclusory allegations.

E. <u>Requested Relief</u>

The SAC seeks the following two forms of relief: (1) an injunction and (2) monetary damages. Specifically, with respect to the injunction, Miller seeks "An injunction directing Defendant to immediately cease and desist from refusing to re-admit [Miller] to the practice of law, and to cease and desist from all actions intended to impose discriminatory or retaliatory conditions upon her reinstatement." SAC at p.19. To state succinctly, Miller seeks two injunctions, the first enjoins Judge Carroll from refusing readmission and the second enjoins Judge Carroll from imposing certain conditions on reinstatement.

### III. DISCUSSION

A. <u>Official Capacity Claim:</u>

Miller seeks injunctive relief against Judge Carroll in his official capacity. For the reasons to follow, the official capacity claims are dismissed for lack of subject matter jurisdiction because the injunction Miller seeks is barred by the Eleventh Amendment and Miller has failed to establish application of the *Ex parte Young* exception.

Judge Carroll first argues that the Court should apply the *Younger* abstention doctrine and abstain from exercising jurisdiction.[10] In the alternative, Judge Carroll argues that the Eleventh Amendment bars the official capacity claim

---

[10] It is unclear whether Judge Carroll is arguing that the *Younger* abstention doctrine applies to both the injunction and the monetary damages claims. As will be addressed later in the decision, the *Younger* abstention does not apply to the monetary damages claim.

because he is not a proper defendant under the principles established by *Ex parte Young*. While there is authority allowing courts to consider *Younger* abstention prior to other Article III jurisdictional challenges; *Spargo v. New York State Com'n of Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003); the Court will address the Eleventh Amendment argument first because it goes to the Court's Article III jurisdiction.

### i. Eleventh Amendment

Judge Carroll argues that the Court lacks subject matter jurisdiction because the Eleventh Amendment bars Miller's official capacity claims and he is not a proper defendant for purposes of and *Ex parte Young* exception.  This argument is premised on the claim that the SAC fails to allege that Judge Carroll plays a part in the reinstatement process or that he has any enforcement authority to remedy any alleged violations.   Miller argues that Judge Carroll does play a part in the reinstatement process because the disciplinary authorities report to him and he established, or was aware of and permitted to remain, policies that caused Miller's alleged unlawful treatment.   Further, Miller argues that Judge Carroll should impose a policy that prohibits persons who act as arms of the court from applying discriminatory requirements for attorney reinstatement.   Judge Carroll's reply highlights that Miller's claims relating to Judge Carroll's purported authority are conclusory and unsupported.

1.  **Legal Standard**

The Eleventh Amendment to the United States Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). "It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Id.* at 663.

One well recognized exception to the Eleventh Amendment bar is the doctrine of *Ex parte Young*. 209 U.S. 123 (1908). In general terms, *Ex parte Young* authorizes federal courts to issue injunctions against a State and/or its officials, to prohibit actions that are contrary to federal law or the Constitution. *Id.* "[T]he doctrine remains a landmark of American constitutional jurisprudence that operates to end ongoing violations of federal law and vindicate the overriding federal interest in assuring the supremacy of that law." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007).

"[A]pplication of the *Young* doctrine is straightforward: A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly

characterized as prospective." *Id.* Though many courts have identified application of the doctrine as straight forward, the Supreme Court has cautioned against applying a lackadaisical approach.

> To interpret *Young* to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle, reaffirmed just last Term in *Seminole Tribe,* that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction. The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading. Application of the *Young* exception must reflect a proper understanding of its role in our federal system and respect for state courts instead of a reflexive reliance on an obvious fiction.

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997).

"Under *Ex parte Young,* the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d at 372–73 (citing to *Ex parte Young*, 209 U.S. at 154). In *Ex parte Young*, the Court explained that "[t]he fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." 209 U.S. at 157. "That a government official must have a connection to the allegedly unconstitutional government act makes sense, for '[a]n injunction may issue only in circumstances where the state official has the authority to perform the required act.'" *Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State*, 336 F. Supp. 3d 50, 68 (E.D.N.Y. 2018) (citing to *Loren v. Levy*, No. 00CIV7687, 2003 WL 1702004, at *11 (S.D.N.Y. Mar. 31, 2003)).

The Second Circuit in *CSX Transp., Inc. v. New York State Off. of Real Prop. Servs.*, 306 F.3d 87, 99 (2d Cir. 2002) considered an argument that certain defendants were not amenable to suit under *Ex parte Young* because they were not responsible for the conduct making up the allegations of violation of federal law. The court disagreed, finding that those defendants were the authorities that created the underlying issue; which was the assessment of railroad taxes for local districts. *Id.* The court explained that "*Ex parte Young* allows for jurisdiction over the Individual Defendants inasmuch as it is in the performance of their duties that there may be an ongoing violation of federal law." *Id.* The Second Circuit was able to determine that the defendants attempting to invoke the Eleventh Amendment were proper defendants by relying on statutes that provided for the authority challenged. *Id.*

In *Nassau & Suffolk County Taxi Owners Association, Inc.*, the Eastern District of New York District Court considered whether a suit challenging the constitutionality of legislation that authorized the New York Department of Motor Vehicle (DMV) to license and regulate transportation network companies such as Lyft and Uber was barred under the Eleventh Amendment. 336 F. Supp. 3d at 57, 65–70. There, the court applied *Ex parte Young* and found the Commissioner of the New York DMV was a proper defendant with a sufficient connection to the allegedly unconstitutional act because the challenged legislation "unequivocally delegates rulemaking authority to [the Commissioner] in her official capacity, and because she has in fact acted on her rulemaking authority . . . ." *Id.* at 68. The court found that the Governor of New York was not a proper defendant because he

is not referenced in his capacity anywhere in the challenged statute and his office does not appear to have any particular enforcement authority. *Id.* at 68. The court rejected the claim that, because the Governor "continue[s] to enforce and license TNS's in violation of federal law," he is a proper defendant. *Id.* at 69. This is because "courts in the Second Circuit have not extended the exception under *Ex parte Young* on the basis that a state official has a general duty to execute and enforce state laws." *Id.* (collecting cases).

In this Court's decision in *Kuck v. Danaher*, 822 F. Supp. 2d 109, 123 (D. Conn. 2011), the plaintiffs generally asserted a violation of their constitutional rights relating to, among other things, an extended backlog in appeals before the Connecticut Board of Permit Examiners and the delay in adjudication due to that backlog. The defendants raised an Eleventh Amendment challenge, arguing that the defendants were not proper defendants as contemplated under *Ex parte Young*. That case was similar to this in that the plaintiff sued an official not a member of the deliberative body, which failed to adjudicate plaintiff's issue. The Court found that the Department of Public Safety Commissioner, who was not a member of the Board that plaintiff alleged failed to act timely, did not have a sufficient connection to the case because he did not have a connection to the enforcement of or any authority over the appeal process before the Board. *Id.* at 141. The Court also found that the Board's sole employee did not have a sufficient connection because the employee was not responsible for scheduling appeals. *Id.* at 142. Lastly, the Court found that the Governor did not have a sufficient connection because the only alleged connection, the power to appoint members of the Board, was not alone

enough to establish the connection requirement under *Ex parte Young*. *Id.* at 142–43 (collecting cases).

### 2. Analysis

The parties do not dispute that the Eleventh Amendment applies. Rather the parties dispute whether the *Ex parte Young* "some connection" requirement has been sufficiently alleged in the SAC. Because this issue goes to the Court's subject matter jurisdiction, the standard of review for Rule 12(b)(1) motions apply. The Court will take the undisputed facts in the complaint as true and resolve disputes based on the evidence presented. *See supra.* Miller has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. It is worth noting at the outset that the Court's analysis will include language that is commonly included in motions to dismiss under 12(b)(6). The Eleventh Amendment challenge goes to the Court's jurisdiction, making it a jurisdictional issue. However, Miller has the burden of proving the Court has jurisdiction and she cannot meet this burden with unsupported and conclusory allegations.

As stated above, Judge Carroll must have "some connection" to the violations of federal law, which here are the allegations of discrimination and retaliation in failing to act on Miller's motion for reinstatement to the practice of law. Miller alleges that Judge Carroll's connections to the alleged violations of federal law include (1) the claim that the disciplinary authorities involved ultimately report to him, (2) that he appoints the members of the standing committees, (3) that he has established or was aware of policies that resulted in the violations alleged, and (4) that he has a duty to rectify the violations by instituting a policy prohibiting

22

discrimination.   As addressed below, none of these allegations establish the connectivity that *Ex parte Young* contemplates.

The Court rejects Miller's argument that because disciplinary authorities ultimately report to Judge Carroll, he has the connection required for *Ex parte Young*.  Nothing in the record, other than Miller's conclusory allegations, plausibly allege that the relevant disciplinary authorities report to Judge Carroll.  Not even the conclusory allegations allege that the relevant disciplinary authorities report to Judge Carroll in a manner relevant here.   Judge Carroll, as the Chief Court Administrator, is the chief administrative officer of the Connecticut Judicial Department not its chief policymaker.   Conn. Gen. Stat. § 51-1b(b), 51-5a.  Connecticut law authorizes the judges of Connecticut courts to adopt and promulgate rules of practice and procedure.  Conn. Gen. Stat. § 51-14.  These rules of Superior Court practice and procedure are voted upon by the judges of the Superior Court.  Conn. Prac. Bk. § 1-9.  Meaning, promulgation of rules of practice and procedure are not within Judge Carroll's authority.  Judge Carroll does not have the authority to appoint the members of the boards or the Disciplinary Counsel. The members of the SCRA are appointed by the Judges of the Superior Court.  Conn. Prac. Bk. § 2-12.  The members of the SGC are appointed by the Judges of the Superior Court. Conn. Prac. Bk.  § 2-33.  The Chief Disciplinary Counsel is also appointed by the Judges of the Superior Court.  Conn. Prac. Bk. § 2-34A.  Nor does the Chief Court Administrator have authority to set the deadlines by which they must act, which is set by the judges of the Superior Court.  Conn. Prac. Bk. § 1-9.

The grievance process is delineated in the Rules of the Superior Court. The rules charge the Chief Court Administrator with the ministerial duty to promulgate the form to apply for reinstatement.  Miller asserts no rule of practice or statute conferring on the Chief Court Administrator authority to direct the disciplinary authorities appointed by the judges of the Superior Court to schedule a hearing or recommend any conditions for reinstatement.  Nor does Miller assert any fact or authority to support her contention that the Chief Court Administrator has power to direct the three-judge panel that decides her reinstatement application to impose or not impose certain conditions of reinstatement.  Miller's factually and legally unsupported suppositions are contrary to the Rules of Practice and Connecticut law and thus do not fall within the exception to the jurisdictional bar established by *Ex parte Young*.

The Court also rejects Miller's argument that because Judge Carroll is one of the more than 150 Superior Court judges authorized to vote to appoint the members of the standing committee, he has the connection required to overcome the Eleventh Amendment jurisdictional bar created by *Ex parte Young*.  This argument was rejected in *Kurk*, 822 F. Supp. 2d at 142–43 (finding that the power to appoint is not alone enough to meet the connection requirement under *Ex parte Young*).  Further, if the mere act of appointing disciplinary authorities provided a basis for subjecting Judge Carroll to an injunction, then all of the Judges of the Connecticut Superior Court would be subject to the same injunction because they, as a group, appoint the various disciplinary authorities mentioned in the SAC. That would be nonsensical.  It cannot logically be said that all the Judges of the Superior

24

Court have some connection to the delay in Miller's reinstatement because they played some role in appointing the people who are arguably responsible for the delay.

The Court also rejects Miller's arguments relating to the alleged policy that Judge Carroll has established or was aware of and didn't correct.   These allegations, which are unsupported by factual allegations or evidence, do not satisfy Miller's burden of establishing subject matter jurisdiction.   At most, the allegations are merely conclusory being logically no different than the allegations in *Iqbal* that were found to be conclusory.   556 U.S. at 666 (finding the following allegations conclusory: "that petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him,]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest' . . . Ashcroft was the 'principal architect' of this invidious policy . . . and that Mueller was 'instrumental' in adopted and executing it . . . .").   Miller's allegations are resoundingly similar to those rejected in *Iqba*l.

Even after being enlightened by the motion to dismiss Miller still has failed to present any evidence, let alone factual allegation, to support the claim of discriminatory policy.   Miller does not even identify the policy she is challenging. Miller can not meet her burden of proof in establishing subject matter jurisdiction through conclusory and vague allegations.

The wrongful conduct Miller alleges here—that her reinstatement application has been delayed on the basis of her race and protected speech—are not

wrongdoings alleged to come from Judge Carroll's hand.  These are allegations of wrongdoings by persons not parties to this suit.  Miller has not established that the *Ex parte Young* doctrine applies because she has not shown that Judge Carroll has some connection to alleged violations of federal law.  Thus, the Court is bound by the Eleventh Amendment, which bars this suit against Judge Carroll in his official capacity as a state judicial officer.

### 3.  Conclusion

Miller has failed to prove that the doctrine of *Ex parte Young* excepts her official capacity claim from the Eleventh Amendment.  In addition to failing to state a claim against Judge Carroll, she has failed to assert facts establishing that he can afford her the relief she seeks.  The official capacity claim for an injunction is dismissed for lack of subject matter jurisdiction.

Because the Court finds that the official capacity claims are dismissed due to a lack of subject matter jurisdiction, the Court need not and will not address Judge Carroll's argument that the Court should abstain from exercising jurisdiction under the *Younger* abstention doctrine.

### B.  Individual Capacity: Monetary Damages

Aside from the injunction, Miller also seeks monetary damages against Judge Carroll in his individual capacity pursuant to 42 U.S.C. § 1983 for the claims of race discrimination, denial of procedural due process, and retaliation.  Judge Carroll appears to argue that the Court should apply the *Younger* abstention doctrine and abstain with respect to this claim.  Further, Judge Carroll argues that he is entitled to qualified immunity and that Miller has failed to state a claim upon

which relief can be granted.  Miller disagrees, arguing that the *Younger* abstention doctrine does not apply and, even if it did, exceptions to the doctrine under bad faith and harassment should apply.  Miller also argues that Judge Carroll is not entitled to qualified immunity.  Miller does not directly respond to Judge Carroll's argument under Rule 12(b)(6).

### 1.  Younger *abstention*

Judge Carroll argues that the *Younger* abstention doctrine applies and Miller's allegations of improper handling of her reinstatement application should be raised in the ongoing disciplinary action before the Superior Court.  Judge Carroll asserts that the Superior Court is capable of addressing these claims.  Miller argues that there is no viable means in the Connecticut State Courts to resolve her claims of constitutional violations.  Miller cites to the suspension decision where the Superior Court found that Miller's affirmative defense of race discrimination were not properly before the court.

The Supreme Court in *Younger* counseled federal courts to generally refrain from enjoining or otherwise interfering in ongoing state proceedings.  *Younger v. Harris*, 401 U.S. 37, 43–45 (1971).  "[A]bstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and [the court] would dismiss otherwise identical claims for declaratory and injunctive relief, but that a stay of the action pending resolution of the state proceeding may be appropriate."  *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000).

Here, the individual capacity claims raised by Miller seek damages and thus abstention under *Younger* would be inappropriate.  *Id.*  However, the Court could stay these proceedings until the adjudication of the state reinstatement proceedings are finalized.  Because the Court finds that Miller has failed to state a claim upon which relief can be granted, as intimated above in its ruling on the Eleventh Amendment bar, and articulated below, such stay is unnecessary here.

   2.  *Failure to State a Claim*

Judge Carroll's briefing first argues that he is entitled to qualified immunity and then argues that the SAC fails to state a claim upon which relief can be granted. The Court will address the failure to state a claim argument first because the failure to state a claim moots the qualified immunity defense.

Judge Carroll argues that Miller's complaint fails to state a claim upon which relief can be granted because it fails to allege facts demonstrating that Judge Carroll was personally involved in the alleged misconduct that is the basis for her claims.  Miller's opposition does not directly address this argument.  However, the Court will consider the arguments and themes raised in her SAC and opposition in analyzing this basis for dismissal.  Miller's arguments include the claim that Judge Carroll established or otherwise allowed to maintain a policy that disciplinary authorities utilized in discriminating against her on the basis of her race and retaliated against her on the basis of her protected speech.  Further, Miller has argued in her opposition and SAC that Judge Carroll knew about the discriminatory and retaliatory treatment and he has done nothing to rectify the issue.  Lastly, Miller

generally alleges that Judge Carroll is responsible for the disciplinary authorities that have engaged in the alleged unlawful conduct.

"An individual may be held liable under §§ 1981 and 1983 only if that individual is 'personally involved in the alleged deprivation.'" *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015).

> Personal involvement can be established by showing that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Id*. "In addition to fulfilling one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Id.* "To lay a proper foundation for individual liability, the plaintiff must plead 'specific, nonconclusory factual allegations' to establish the participation at the necessary mental state of the individual defendants, or [her] claims against them will be dismissed." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 602 (S.D.N.Y. 2011). In *Littlejohn*, the Second Circuit found that a claim that a defendant "wields a lot of power around here" does not create a plausible inference that the defendant was grossly negligent in supervising the subordinate that is alleged to be involved in the constitutional violation. *Id.* at 314.

Here, the Court finds that Miller has failed to state a claim that is plausible on its face. Many of her allegations that are specific to Judge Carroll are conclusory and thus not entitled to the assumption of truth as discussed above.

This includes her claim that Judge Carroll created or otherwise maintained a discriminatory and/or retaliatory policy that caused Miller's injuries. The remaining claims are that: (1) Judge Carroll was aware of the discriminatory and retaliatory treatment inflicted by the disciplinary authorities and did nothing to rectify it and (2) Judge Carroll suspended the timeframes within the Practice Book as applied to her but not a Caucasian attorney.

Judge Carroll's purported knowledge about discriminatory and retaliatory treatment and the failure to rectify does not set forth a plausible claim on its face for two reasons.   First, the allegations that Judge Carroll knew about Miller's allegations are not plausible.   This is because Miller claims he must have known based on the sheer volume of cases she has brought making those allegations. This does not set forth a plausible claim of knowledge because the fact that a lawsuit is available on a public docket does not mean that everyone is aware of the allegations contained therein.   Thousands of cases are filed every year, it cannot be said that even the most observant juris is aware of all of the cases filed in state and federal court much less all the allegations contained therein.   Second, even if Judge Carroll read every lawsuit and pleading filed by Miller, this does not establish that he knew of a violation of federal law by persons within his authority to control or the ability to rectify.   An allegation in a complaint is not an established fact.   As discussed in greater detail above, the SAC fails to establish that Judge Carroll as Chief Court Administrator has authority to interfere in the adjudication of Miller's reinstatement application.   There are no factual allegations that Judge Carroll could have done something to remedy the alleged harm.   As explained above, all the

disciplinary authorities that Miller alleges were involved in the delay of her reinstatement proceedings are appointed by the Judges of the Superior Court, not just Judge Carroll.   Each authority is cloaked with duties and responsibilities established under the Connecticut Practice Book, which is promulgated also by the Judges of the Superior Court.  There is no reason to believe that Judge Carroll can take any action that could limit or compel action by the disciplinary authorities acting within their authority under the Practice Book.   On the contrary, his sole role is a ministerial one.

Lastly, Miller's allegations about a Caucasian comparator and the Practice Book deadlines suspension fail to allege personal involvement by Judge Carroll. This is because there is no allegation that Judge Carroll was at all involved in the scheduling of the hearing for the Caucasian comparator.   In addition, the suspension of the Practice Book deadlines was the result of actions by the Rules Committee of the Superior Court, not Judge Carroll.

Therefore, the individual capacity monetary damages claims are dismissed for failure to state a claim upon which relief can be granted.  This dismissal is without prejudice to Miller filing an amended complaint within twenty-one (21) days of this order addressing the deficiencies highlighted by this decision and states a claim that is plausible on its face.  Failure to do so will result in this dismissal converting to one with prejudice.

Because the Court finds that the SAC fails to state a claim upon which relief can be granted, the Court need not and does not address the argument that Judge Carroll is entitled to qualified immunity.

## IV.    CONCLUSION

For the aforementioned reasons, the Court dismisses the SAC to the extent that is seeks an injunction against Judge Carroll for lack of subject matter jurisdiction.  The injunction claims are dismissed with prejudice.  The Court also dismisses the SAC to the extent that is seeks monetary damages against Judge Carroll for failure to state a claim upon which relief can be granted.  The monetary damages claims are dismissed without prejudice to Miller filing an amended complaint within twenty-one (21) days that satisfies the deficiencies highlighted in this decision and states a claim upon which relief can be granted.  Failure to do so will result in this dismissal converting to one with prejudice.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: May 17, 2021