## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Josephine Smalls Miller     :
     :
Plaintiff,     :   No. 3:21-cv-14-VLB
     :
v.     :
     :   March 28, 2022
Honorable Patrick Carroll, III     :
     :
Defendant.     :
     :

**OMNIBUS DECISION GRANTING DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT [DKT. 30] AND DENYING PLAINTIFF'S MOTIONS TO AMEND COMPLAINT [DKTS. 33, 38].**

Josephine Miller ("Plaintiff") was suspended from the practice of law in the state of Connecticut for a period of one year. Following her period of suspension, she was required to complete an application for reinstatement complying with the general rules for attorney reinstatement established under the Connecticut Practice Book and with special conditions set forth in the order of the court that suspended her. Plaintiff filed an application for reinstatement in January 2020, which did not comply with all requirements. Approximately twenty-one months passed between the time Plaintiff brought her incomplete application for reinstatement and an initial hearing was held on the application. Plaintiff alleges that the delay in scheduling her initial hearing was either directly caused by or the product of an established discriminatory and/or retaliatory policy or policies by the Chief Court Administrator for the State of Connecticut Judicial Branch—Judge Patrick Carroll, III ("Judge Carroll")—and the Presiding/Administrative Judge of the Hartford Judicial District for the State of Connecticut Judicial Branch—Judge

David Sheridan ("Judge Sheridan").  Plaintiff alleges that Judges Carroll and Sheridan established and maintained a policy or policies of (a) refusing to provide substantive due process rights to attorneys charged with violating Rules of Professional Conduct, (b) providing procedural due process rights of notice in a nominal sense only, (c) arbitrary and capricious discipline of attorneys and application of rules regarding re-admission to the practice of law, and (d) racially discriminatory treatment of attorneys in the application of rules regarding re-admission to the practice of law.

Plaintiff's original complaint was brought in January 2021; [Dkt. 1]; which was followed by a first amended and a second amended complaint.  [Dkts. 8, 17]. The first three complaints list only Judge Carroll as a defendant.  Judge Carroll filed a motion to dismiss the second amended complaint, which the Court granted. [Dkt. 26].  In the order granting Judge Carroll's motion to dismiss, the Court afforded Plaintiff an opportunity to amend her complaint to address deficiencies discussed in the decision.  [*Id.*].  Plaintiff subsequently filed a third amended complaint.  [TAC, Dkt. 27].

Before the Court is Judge Carroll's motion to dismiss the third amended complaint.  [Mot. to Dismiss, Dkt. 30].  Judge Carroll seeks to dismiss the third amended complaint in its entirety arguing, *inter alia*, that Plaintiff has failed to state a claim upon which relief can be granted, or alternatively, he is entitled to qualified immunity.  [*Id.*].  Plaintiff objects to the first argument but did not respond to the qualified immunity argument.  [Opp. to Mot. to Dismiss, Dkt. 31].

2

While the motion to dismiss was pending adjudication, Plaintiff brought two motions to amend her complaint.  The first motion to amend the complaint seeks to add additional factual allegations relating to Judge Carroll's purported involvement in the alleged unlawful delay in the processing of her attorney reinstate application.  [First Mot. to Am., Dkt. 33].  The second motion to amend the complaint seeks to add Judge Sheridan as a defendant with respect to all claims.  [Second Mot. to Am., Dkt. 38].  Judge Carroll opposes both motions to amend arguing, *inter alia*, undue prejudice and futility.  [Opp. to First Mot. Am, Dkt. 37; Opp. to Second Mot. to Am., Dkt. 39].

For the following reasons, the Court GRANTS Judge Carroll's motion to dismiss and DENIES Plaintiff's motions to amend.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The following background is collected from the well-pled facts in Plaintiff's proposed fourth amended complaint that are entitled to the assumption of truth, as will be explained below, as well as matters of which the Court can take judicial notice—including the docket sheet from the related state court proceeding.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).  Though the Court has not granted either of Plaintiff's motions to amend, for the sake of this decision the Court will include in the background facts alleged therein.

### A.  Presentment Action, Suspension Order, and Appeal

Plaintiff is an African-American.  [Proposed FAC ¶ 4, Dkt. 38].  Plaintiff was admitted to the practice of law in the State of Connecticut in or around June 2004.  [Proposed FAC ¶ 35].  On March 30, 2017, a presentment action was brought by the

Connecticut Office of Chief Disciplinary Counsel ("OCDC") against Plaintiff for attorney misconduct. *Office of Chief Disciplinary Counsel v. Miller*, DBD-CV17-6022075-S (Conn. Super. Ct. Nov. 26, 2018) (hereinafter "*Presentment Action*"), Entry No. 100.30. In the initial presentment complaint, the OCDC alleged that the Statewide Grievance Committee ("SGC") found Plaintiff violated multiple Rules of Professional Conduct relating to her handling of an Interest on Lawyer Trust Accounts (IOLTA) account and her response to a disciplinary inquiry. *Id.* Thereafter, the OCDC brought an amended complaint lodging additional allegations of attorney misconduct, including allegations relating to a lack of diligence in handling two cases, a failure to communicate, and unauthorized practice of law. *Presentment Action*, Entry No. 108.00. With respect to the unauthorized practice of law claim, the amended presentment complaint alleged that Plaintiff represented a client in a Connecticut Appellate Court case during the time in which she was suspended from practicing law before that court. *Id.* Following a hearing in the presentment action, Plaintiff filed a post-hearing brief wherein she raised allegations of racial discrimination against Connecticut disciplinary authorities, including the OCDC and SGC. *Presentment Action*, Entry No. 125.00.

On November 26, 2018, the Connecticut Superior Court (Shaban, J.) entered an order and decision suspending Plaintiff from the practice of law for a period of one year. [Proposed FAC ¶ 36]; *Presentment Action*, Entry No. 131.05. The Superior Court found that Plaintiff's "special defenses" relating to racial discrimination were "not properly before the court" and "would fail even if they

4

were properly before the court because [Plaintiff] failed to meet her burden of proof in this regard." *Presentment Action*, Entry No. 131.05 at 28.  The Superior Court ordered Plaintiff to comply with all terms and conditions of Connecticut Practice Book § 2-53 in the event she applies for reinstatement after her period of suspension in addition to complying with special conditions including (1) mentorship by a practicing attorney of the bar that is in good standing for a period of one year and (2) completion of continuing legal education courses in legal ethics and law office management.  [Proposed FAC ¶ 37]; *Presentment Action*, Entry No. 131.05 at 29–40.  Plaintiff appealed the Superior Court's suspension decision, which was transferred to the Connecticut Supreme Court.  *Presentment Action*, Entry No. 145.00.  The Connecticut Supreme Court affirmed the Superior Court's suspension decision.  *Presentment Action*, Entry No. 162.00.

B. <u>Connecticut Practice Book Reinstatement Rules</u>

The Connecticut Practice Book sets forth the Connecticut Superior Court's Rules for attorney reinstatement after suspension.  Conn. Prac. Book § 2-53.  Section 2-53(a) provides that, unless otherwise ordered by the court that imposed the discipline, attorneys suspended from the practice of law for a period of one year or more shall be required to apply for reinstatement.  Subsection (d) provides that:

> (d) Unless otherwise ordered by the court, an application for reinstatement shall not be filed until:
> (1) The applicant is in compliance with Sections 2-27(d), 2-70 and 2-80;
> (2) The applicant is no longer the subject of any pending disciplinary proceedings or investigations;

**(3) The applicant has passed the Multistate Professional Responsibility Examination (MPRE) not more than six months prior to the filing of the application;**
**. . .**
**(5) The applicant has fully complied with all conditions imposed pursuant to the order of discipline. If an applicant asserts that a certain disciplinary condition is impossible to fulfill, he or she must apply to the court that ordered the condition for relief from that condition prior to filing an application for reinstatement;**
**(6) The bar examining committee has received an application fee. The fee shall be established by the chief court administrator and shall be expended in the manner provided by Section 2-22 of these rules.**

Applications for reinstatement are to be filed with the clerk of the Superior Court in the jurisdiction that issued discipline, be on a form approved by the Office of Chief Court Administrator, and be accompanied by proof of payment of the application fee.  Conn. Prac. Book § 2-53(e).

Upon submission of the application, the chief justice or their designee is to refer the matter to a standing committee whose members do not maintain a primary office in the same judicial district as the applicant.  Conn. Prac. Book § 2-53(f). Notice of the pending application is then to go out to various disciplinary authorities, including the OCDC and SGC, and notice is to be published.  Conn. Prac. Book § 2-53(g).

The Practice Book then requires, within 60 days of referral to the standing committee, the SGC and OCDC issue a report with the standing committee with respect to the application for reinstatement.  Conn. Prac. Book § 2-53(h).  The standing committee is then obligated, within 180 days of referral, to investigate the application, hold hearings, and render a report with its recommendation to the court.  Conn. Prac. Book § 2-53(i) and (j).  The standing committee's report shall

recommend the application either be granted, granted with conditions, or denied. Conn. Prac. Book § 2-53(k).

Upon receiving the standing committee's report, the Superior Court is to inform the chief justice of the pending application, who is to designate two other judges of the Superior Court to sit with the presiding judge.  Conn. Prac. Book § 2-53(l).  A hearing is then to be conducted before the three-judge panel where the applicant, the SGC, the OCDC, and the standing committee shall be given an opportunity to be heard.  *Id.*  The panel is then to determine whether the application should be granted.  *Id.*

As explained in greater detail in the Court's decision granting Judge Carroll's first motion to dismiss, the Connecticut Practice Book deadlines were suspended on March 24, 2021 due to the COVID-19 pandemic.  [Dec. on First Mot. to Dismiss at 9–10, Dkt. 26].

C. <u>Defendant and Non-Defendant Roles</u>

Judge Carroll is the only defendant in this case and he is being sued in both his official capacity as Chief Court Administrator and in his individual capacity for conduct relating to his role as Chief Court Administrator.  Connecticut statutes provide for the Chief Court Administrator position.  Conn. Gen. Stat. § 51-5a.  The Chief Court Administrator is appointed by the Chief Justice of the Connecticut Supreme Court and, in general terms, is the chief administrative officer of the Connecticut Judicial Department.  Conn. Gen. Stat. §§ 51-1b(b), 51-5a.  The Office of the Chief Court Administrator, which operates under the supervision and direction of the Chief Court Administrator, conducts activities such as auditing

bills, maintaining account records, preparing and submitting a budget, acting as a secretary at any meetings for the judicial department, and conducting other administrative acts.  Conn. Gen. Stat. § 51-9.

Though Judge Carroll is the only defendant, Plaintiff's complaints include allegations of wrongdoing at the hands of various disciplinary authorities involved in the processing of Miller's application for reinstatement.   First, Plaintiff's complaints raise claims relating to the Hartford County Standing Committee on Recommendations for Admission ("SCRA").  There is an SCRA in each of the eight Connecticut counties.  Conn. Prac. Bk. § 2-12.  Each SCRA is made up of at least three, but not more than seven, members of the bar of the county in which it sits. *Id.*  The members of the SCRA are appointed by the judges of the Superior Court. *Id.*  Second is the Statewide Grievance Counsel ("SGC"), which is a group of twenty-one attorneys and laypersons all appointed by the Judges of the Superior Court.  Conn. Prac. Bk.  § 2-33.   Lastly is the Office of Chief Disciplinary Counsel ("OCDC"), which operates under the control of Chief Disciplinary Counsel—a single person also appointed by the judges of the Superior Court.  Conn. Prac. Bk. § 2-34A.   To summarize briefly, the non-parties mentioned by Plaintiff in her complaint are all appointed by the judges of the Superior Court as provided for under the Connecticut Practice Book.

Lastly, in Plaintiff's proposed fourth amended complaint, she seeks to add Judge Sheridan as a defendant.  Judge Sheridan at all relevant times was the presiding judge of the Hartford Judicial District.  [Proposed FAC ¶ 6].

8

D. **Plaintiff's Application Process**

After the one-year period of suspension, on December 30, 2019, Plaintiff filed an application for reinstatement to the practice of law and paid the required filing fee. [Proposed FAC ¶ 38]; *Presentment Action*, Entry No. 147.00. In her application, she was asked to check off a box indicating that she has complied with Connecticut Practice Book section 2-53(d) and attach proof of compliance with the lists of conditions. *Presentment Action*, Entry No. 147.00 at 1. She checked off the box labeled "N/A" for the condition that reads: "I took the Multistate Professional Responsibility Examination in the past six months on _____ and received a passing score which was sent to the Connecticut Bar Examining Committee." *Id.* The application also asks "Do you intent to consult with a practice mentor if you are reinstated? If yes, list the mentor's name and juris number." *Id.* at 4. Plaintiff checked off "Yes" but did not list the name or juris number for the mentor. *Id.*

On January 7, 2020, notice of Plaintiff's application for reinstatement was published by the Connecticut Judicial Branch. [Proposed FAC ¶ 39].

On January 31, 2020, the SGC filed a motion to dismiss the application for reinstatement arguing, *inter alia*, Plaintiff failed to take and pass the MPRE. *Presentment Action*, Entry No. 152.00. On April 13, 2020, Plaintiff filed passing test results from an MPRE administered on March 12, 2020. *Id.*, Entry No. 158.00. Three days later, the SGC withdrew its motion to dismiss. *Id.*, Entry No. 159.00.

Plaintiff suggests that investigation into her application for reinstatement took place during August 2020, which was over three months after the SGC withdrew its motion to dismiss. In support of this claim, Plaintiff states that on

August 27, 2020 an investigator contacted a volunteer organization relating to her application for reinstatement, and the requested information was supplied by September 4, 2020.  [Proposed FAC ¶ 81].

Over six months after the SGC withdrew is motion to dismiss, on October 30, 2020, Plaintiff inquired with the OCDC, SGC, and Hartford SCRA regarding the delay in scheduling an initial SCRA hearing on Plaintiff's application for reinstatement.  [Proposed FAC ¶ 45].  Later that day, a representative from the Hartford SCRA emailed Plaintiff that her "application was filed before the pandemic crisis was upon us.  You know the reason why your case has been delayed along with many others.  I will contact you as soon as we are advised we can proceed. This is not a failure to proceed, it is an inability to do so."  [*Id.* ¶ 46].  On November 2, 2020, SGC Bar Counsel responded as follows:

> My office was closed from March of 2020 until September 8, 2020 due to the COVID pandemic.  The Rules Committee of the Superior Court waived deadline in Practice Book Section 2-53 during this time. Thereafter, my office has lost three staff members due to retirement. The current priority of my office is to process grievance complaints and continue our regulatory work as possible.  Due to the staffing shortage, it has been impossible for us to focus on preparing the report regarding your application for reinstatement. . . . [T]he Statewide Grievance Committee is not holding public hearings at this time.  In light of these scarce judicial resources, my office is doing its best to prepare a diligent report and the Hartford Standing Committee has indicated a preference for receiving that report prior to scheduling a hearing.

[*Id.* ¶¶ 47–48].

On November 18, 2020, a representative from the Hartford SCRA emailed Plaintiff the following:

**Late Tuesday afternoon November 17th, I had a telephone conversation with the committee's Superior Court Liaison officer, Attorney Beth Willett. I have learned the following:**
**1. No in person hearings are currently being conducted. No date has been set as to when that may change.**
**2. The request of the Committee to conduct a virtual hearing, subject to you being comfortable with that, has been forwarded to the appropriate department which funds such requests.**
**3. The funding department has not yet approved our request.**
**4. Even if the request is approved it would not appear that we would be able to conduct a hearing until at the very least February 2021.**
**5. I will advise you as soon as I have further information.**

[*Id.* ¶ 57].  The next day, another representative emailed Plaintiff the following:

**Let me explain to you the current status of your request.  I received from Attorney Friedle an email last week on 11/10 that requested that I help to set up time in the courthouse.  After receiving this email, I sent the request to Judge Sheridan, who is the presiding and administrative judge for Hartford.  Once he received it, he informed me that due [to] the fact that we are not allowing matters to occur in person and that it would be likely need to be scheduled using remote/virtual courtrooms. . . . Judge Sheridan also said since this was a nonjudicial use of a remote/virtual courtroom that he would have to get permission to use this system.  Currently the request for permission is still pending.  Please note that the permission is not pending with the 'funding department' as Attorney Friedle stated in his email to you.  I believe he stated this due to a misunderstanding [of] what I said to him.**

[Proposed FAC ¶¶ 59–60].

On November 10, 2020, the OCDC and SGC issued a report to the Hartford SCRA.  [Proposed FAC ¶ 40].  Plaintiff alleges that the report accused her of slandering the court system in Connecticut, that she should in the future comport to acceptable bounds of zealous advocacy rather than make racial bias claims without compelling evidence, she should be required to demonstrate a willingness to work within the system to effectuate change, she should be required to report

whether she intends to seek readmission to the Appellate Court and otherwise accept the discipline of the Appellate Court.  [Proposed FAC ¶¶ 84–93].

On March 30, 2021, counsel for the Hartford SCRA filed a motion to transfer Plaintiff's application for reinstatement to another standing committee. *Presentment Action*, Entry No. 178.00.  The Superior Court (Pavia, J.) granted the motion to transfer.  *Id.*, Entry No. 178.01.

On May 11, 2021, the Deputy Chief Court Administrator notified Plaintiff of the transfer of her application for reinstatement to the Middlesex SCRA from the Hartford SCRA.  [Proposed FAC ¶ 141].  Judge Carroll was copied on this notice. [*Id.*].

On August 12, 2021, counsel for the Middlesex SCRA filed a notice of hearing on Plaintiff's application for reinstatement to take place on September 1, 2021. *Presentment Action*, Entry No. 185.00.  On August 30, 2021, two days prior to the scheduled initial SCRA hearing, Plaintiff filed a letter from Attorney Cynthia Jennings wherein Attorney Jennings agreed to mentor Plaintiff.  *Id.*, Entry No. 188.00.

On October 7, 2021, the Middlesex SCRA issued its report on Plaintiff's application for reinstatement recommending her application be granted subject to conditions.  *Id.*, Entry No. 196.00.

E.  Litigation Against Judge Carroll Prior to the Third Amended Complaint

On or about December 12, 2020, Plaintiff filed a complaint of discrimination and retaliation with the Connecticut Commission on Human Rights & Opportunities ("CHRO") against the Connecticut Judicial Branch.  [Proposed FAC ¶ 111].  Notice

of the CHRO complaint was sent to the OCDC, the SGC, and the Hartford SCRA. [*Id.* ¶ 112].

On January 6, 2021, Plaintiff brought this suit against Judge Carroll alleging discrimination, retaliation, and selective enforcement of attorney discipline rules. [*Id.* ¶ 113; Compl., Dkt. 1].  On January 28, 2021, counsel for the Judicial Branch filed an answer to Plaintiff's CHRO complaint claiming that the "CHRO Complaint supports the conclusion that the [Plaintiff] may not be fit to practice law," that "attorneys cannot make unsubstantiated claims about the court system," "that the CHRO Complaint may be impeding the [Plaintiff's] efforts to be reinstated to practice law, and it may further demonstrate that such reinstatement is not appropriate," and "[b]y retaining the complaint . . . is harming the integrity of both the judicial system and the CHRO."  [Proposed FAC ¶ 118].

Plaintiff filed her first amended complaint in this action on January 7, 2021 prior to Judge Carroll's appearance.  [First Am. Compl., Dkt. 8].  Then on March 4, 2021, Judge Carroll filed a motion to dismiss the first amended complaint.  [Mot. to Dismiss First Am. Compl., Dkt. 13].  In response, Plaintiff filed a second amended complaint against Judge Carroll.  [Second Am. Compl., Dkt. 17].  Judge Carroll then filed a motion to dismiss the second amended complaint.  [Mot. to Dismiss Second Am. Compl., Dkt. 19].

The Court dismissed the second amended complaint in whole finding (1) it lacks subject matter jurisdiction over the claims for injunctive relief and (2) the claims for monetary damages failed to state a claim upon which relief can be granted.  [Dec. on First Mot. to Dismiss].  In reaching these findings, the Court

rejected Plaintiff's argument that this case fell within an exception of the doctrine of *Ex parte Young* because Plaintiff failed to sufficiently allege that Judge Carroll has some connection to the alleged violations of federal law.  The Court found Plaintiff's allegations that Judge Carroll established or was aware of racially discriminatory and/or retaliatory policies were conclusory and thus not entitled to an assumption of truth.  [*Id.* 25–26].  Specifically, it was found Plaintiff did "not even identify the policy she is challenging."  [*Id.* 25].

The Court dismissed Plaintiff's monetary damages claims against Judge Carroll, rejecting Plaintiff's theories as unsupported by sufficient factual matter that (1) Judge Carroll established or was aware of a racially discriminatory and/or retaliatory policy and (2) Judge Carroll had knowledge of the discriminatory and retaliatory treatment of Plaintiff and failed to act.  [*Id.* 29–30].  The Court afforded Plaintiff twenty-one days to file an amended complaint that satisfied the deficiencies noted in the decision.  [*Id.* 32].

F.  Third Amended Complaint and Proposed Fourth Amended Complaint

On June 7, 2021, Plaintiff filed her third amended complaint raising the same allegations brought in the second amended complaint and raising additional allegations relating to Judge Carroll's role as the Chief Court Administrator and other attorney reinstatement applications that were processed during the time Plaintiff's application has been pending.  With respect to Judge Carroll's role, Plaintiff has added allegations that Judge Carroll created a "strategic plan" for the Judicial Branch's "Public Service and Trust Commission," ("PSTC"), which Plaintiff describes as an effort by the Judicial Branch to improve collaboration with

14

the other branches of government and their agencies, within the judicial branches various divisions, with the Bar, with other partners, and with the public.  [TAC ¶¶ 91–102].  Plaintiff also adds that Judge Carroll is a member of the Judicial-Media Committee ("JMC") of the Judicial Branch, which connects judges and journalists to engage in long-term analysis of issues.  [*Id.* ¶¶ 103–05]. Plaintiff states that numerous news articles have reported her dissatisfaction with the judicial branch and the disciplinary authorities.  [*Id.* ¶ 106].

Plaintiff seeks to add further allegations relating to Judge Carroll's role as the Chief Court Administrator based on assignment of judges reports that direct assigned judges of the various judicial districts to "[r]epresent the Chief Court Administrator in the efficient management of their respective judicial districts on matters affecting the fair administration of justice and disposition of cases . . .",  to "[i]mplement and execute programs and methods of disposition of cases and administrative matters within their respective judicial districts in according with policies and directives of the Chief Court Administrator . . .", and to "[k]eep Chief Court Administrator advised of unusual activity or problems within the judicial district."  [First Mot. to Am.].

In addition, Plaintiff's proposed fourth amended complaint adds additional allegations relating to other attorney reinstatement proceedings that occurred after the pandemic began.  Plaintiff alleges that between the beginning of the pandemic and September 1, 2021, "at least twenty-nine (29) attorney disciplinary hearings . . . were scheduled."  [Proposed FAC ¶ 66.  Based on the context, these were all the second hearing before the judge panel and not the initial hearing before a SCRA.

Plaintiff states that fifteen of these panel hearings occurred outside of the Hartford Judicial District and fourteen were in the Hartford Judicial District, all fourteen of which were before Judge Sheridan.  [*Id.* ¶¶ 67–68].

Plaintiff includes specific allegations with respect to three attorneys who received initial SCRA hearings during the time her application was pending, all of which were before the Fairfield SCRA.  [*Id.* ¶¶ 74–76].  The first filed an application for reinstatement on August 14, 2020 and had a remote hearing before the Fairfield SCRA on December 11, 2020.  [*Id.* ¶ 74].  The second had a remote hearing scheduled before the Fairfield SCRA on October 23, 2020, but the date of his application is not alleged.  [*Id.* ¶ 75].  The third filed an application on December 1, 2020 and had a remote hearing before the Fairfield SCRA on March 12, 2021.  [*Id.* ¶ 76].  Plaintiff has not presented any allegations relating to initial hearings conducted during the time Plaintiff's application was pending before any SCRA other than Fairfield.

In addition to the new factual allegations relating to Judge Carroll, Plaintiff also seeks to include a new Defendant, Judge Sheridan.  Judge Sheridan was at all material times the Presiding Judge and Administrative Judge for the Hartford Judicial District.  [*Id.* ¶ 6].  Plaintiff states that Judge Sheridan was "the ultimate policy maker and administrative decision-maker regarding processing matters of attorney discipline" in the Hartford Judicial District.  [*Id.* ¶ 24].  Plaintiff argues that Judge Carroll and Judge Sheridan "acted jointly and severally in both their official and individual capacities to cause the prolonged refusal in granting even the initial reinstatement hearing to Plaintiff."  [*Id.* ¶ 147].

16

II.    **LEGAL STANDARD**

    a.  **Motion to Dismiss**

Miller is self-represented (*pro se*) in these proceedings.  Ordinarily, courts liberally construe a complaint filed by a self-represented party to raise the strongest arguments they suggest.  *See e.g., McCray v. Lee*, 963 F.3d 110, 116–17 (2d Cir. 2020).  "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'"  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006).  Plaintiff is not entitled to liberal construction because she was a member of the bar and litigated cases in state and federal court for many years prior to her suspension.  *See Harbulack v. Suffolk County*, 654 F.2d 194, 198 (2d Cir. 1981) (finding that a practicing lawyer is not entitled to liberal construction).   With that said, the Federal Rules of Civil Procedure counsel courts to construe pleadings "so as to do justice."  Fed. R. Civ. P. 8(e).  Thus, the Court will address the claims and arguments raised by Plaintiff "so as to do justice."

Judge Carroll seeks dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) allows a party to assert by motion a defense that the complaint fails to state a claim upon which relief can be granted.  "To survive [a] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Not all allegations in a complaint are entitled to the

presumption of truth. *Id.* Conclusory allegations that are no more than "legal conclusions" or "[t]hreadbare recitals of elements of a cause of action" are not entitled to the presumption of truth. *Id.* If after considering the well-pled factual allegations the court finds that the complaint does not raise a plausible claim for relief, the court should dismiss the case. *Id.* at 679. The plausibility standard is more than mere possibility of misconduct. *Id.* Further, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Rivera v. Westchester Cty.*, 488 F. Supp. 3d 70, 75–76 (S.D.N.Y. 2020) (citing to *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)). The defendant bears the burden of proof on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014).

*Iqbal* elucidates the meaning of conclusory allegations of discriminatory policymaking and policy enforcement. 556 U.S. 662. In *Iqbal*, the respondent (a Pakistani citizen and Muslim) sued the petitioners (numerous federal officials including Ashcroft, former Attorney General of the United States and Mueller, the then-Director of the Federal Bureau of Investigations) alleging the petitioners adopted an unconstitutional policy that subjects the respondent to harsh conditions of confinement on account of his race, religion, or national origin. 556 U.S. at 666. The Court held that several of the allegations made by the respondent in his complaint were conclusory and thus not entitled to the presumption of truth.

*Id.* at 680–81.  These allegations included "that petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him,]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest' . . . Ashcroft was the 'principal architect' of this invidious policy . . . and that Mueller was 'instrumental' in adopt[ing] and executing it . . . ."  *Id.*  These accusations were deemed 'conclusory' and not entitled to the presumption of truth.  *Id.* at 681.  The Court ultimately concluded that the complaint failed to plead sufficient facts to state a claim for purposeful and unlawful discrimination against the petitioners and remanded to the circuit court for a determination of whether remand to the district court was necessary.  *Id.* at 687.

### b.  Motion to Amend

Under Rule 15(a), "[t]he court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend, though liberally granted, may properly be denied for: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "An amendment is considered 'futile' if the amended pleading fails to state a claim, or would be subject to a successful motion to dismiss on some other basis." *Nwachukwu v. Liberty Bank*, 257 F. Supp. 3d 280, 286 (D. Conn. 2017).

## III.   DISCUSSION

This decision covers Defendant's motion to dismiss the third amended complaint, Plaintiff's first motion to amend the third amended complaint, and Plaintiff's second motion to amend the third amended complaint.  For ease of adjudication, the Court will address whether Plaintiff states a claim upon which relief can be granted in her proposed fourth amended complaint, which takes into consideration all arguments raised by Defendant in its motion to dismiss and its opposition to Plaintiff's motions to amend.  A finding that Plaintiff's proposed fourth amended complaint fails to state a claim upon which relief can be granted would warrant dismissal of the operative complaint under Rule 12(b)(6) and denial of the motion to amend due to futility of amendment.  *See supra*.

Plaintiff's proposed fourth amended complaint raises four causes of action against both Judge Carroll and Judge Sheridan, all under section 1983, for: (1) race discrimination, (2) procedural due process, (3) retaliation, and (4) selective enforcement.  [Proposed FAC 32–34].  Plaintiff seeks the following relief: (1) an injunction directing Judge Carroll and Judge Sheridan to "immediately cease and desist from refusing to reinstate Plaintiff to the Practice of law, and to cease and desist from all actions intended to or actually imposes discriminatory or retaliatory procedural or other conditions upon her reinstatement", (2) a declaratory judgment that Judge Carroll and Judge Sheridan "are prohibited from requiring Plaintiff to refrain from filing or pursuing a complaint of discrimination and/or retaliation and/or selective enforcement in order to qualify for reinstatement to the practice of law," (3) a declaratory judgment that Judge Carroll and Judge Sheridan "are

prohibited from finding that filing of a complaint of discrimination and/or retaliation and/or selective enforcement can be a legal basis for a finding that the attorney is unfit to practice law," and (4) compensatory damages as to individual capacity claims only.  [Proposed FAC 35].

The Court will first address Plaintiff's request for declaratory and injunctive relief and will then address whether she has sufficiently stated a claim to monetary damages.

a.  Declaratory and Injunctive Relief

Defendant argues the Court should summarily dismiss Plaintiff's claims for declaratory and injunctive relief because those claims were already dismissed with prejudice by the Court in its decision granting Defendant's first motion to dismiss. Plaintiff does not object to this argument, but rather states that she included these claims in her amended complaints so as to preserve the issue for appeal.[1]

Plaintiff has failed to address Defendant's argument that these claims should be dismissed, thus has abandoned any argument against dismissal and in turn abandoning the declaratory and injunctive relief claims in the Third Amended Complaint.  *See Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018) (citing to *Johnson v. City of New York*, No. 15-cv-8195, 2017 WL

---

[1] **Plaintiff provides no legal basis supporting her position that re-raising dismissed claims is necessary to preserve an argument that the claims were improperly dismissed for appeal purposes.  There is no such requirement.  *See P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004) ("We will not require a party, in an amended complaint, to replead a dismissed claim in order to preserve the right to appeal the dismissal when the court has not granted leave to amend.").**

2312924, at *18 (S.D.N.Y. May 26, 2017)) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim.").

Therefore, Plaintiff's claims for declaratory and injunctive relief are dismissed.

### b. Monetary Damages Claim

Defendant argues that Plaintiff's third amended complaint fails to state a claim upon which relief can be granted against Judge Carroll and Plaintiff's motions to amend should be denied as futile for the same reason with respect to both Judge Carroll and Judge Sheridan. Plaintiff raises several arguments in opposition to Judge Carroll's motion to dismiss but makes no articulated argument as to why the claims against Judge Sheridan are not futile.

### i. Legal Standard

A plaintiff raising a section 1983 claim "must directly plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachman*, 983 F.3d 609, 612 (2d Cir. 2020) (citing to *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "Supervisory liability," that is liability for "knowledge and acquiescence in their subordinates'" unconstitutional conduct, is not enough to state a claim for section 1983 liability. *Iqbal*, 556 U.S. at 677.

In *Iqbal*, a Pakistani citizen and Muslim brought a *Bivens* action against the former Attorney General of the United States and the Director of the Federal Bureau of Investigation (FBI) alleging "they adopted an unconstitutional policy that subjected respondent to harsh conditions of confinement on account of his race,

religion, or national origin." *Id.* at 666.  The Supreme Court concluded that the petitioner failed to state a claim upon which relief can be granted against the high-ranking officials.  *Id.* at 677.  In reaching this conclusion, the Supreme Court rejected the petitioner's argument that "a supervisor's mere knowledge of his subordinates discriminatory purpose amounts to the supervisor's violating the Constitution." *Id.*

The Second Circuit recently adopted the Tenth Circuit's explanation that "[t]o establish a violation of § 1983 by a supervisor, as with everyone else, [ ], the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." *Tangreti*, 983 F.3d at 618 (citing to *Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir. 2010) (Gorsuch, J.)).  In *Tangreti*, an incarcerated person brought a section 1983 action against various prison supervisors alleging "they violated the Eighth Amendment by displaying deliberate indifference to the substantial risk of sexual abuse" by three correction officers who sexually abused her on numerous occasions.  *Id.* at 612.  At issue in *Tangreti* was a claim against a counselor supervisor who observed the incarcerated person and one of the abusers frequently around each other, knew of complaints by other incarcerated persons about the closeness of the incarcerated person and the abuser, and observed the incarcerated person suffering from signs of mental distress.  *Id.* at 613–14.  The district court below denied summary judgment to the counselor supervisor because she "was conceivably personally involved" in the violations.  *Id.* at 614.  Applying the standards of establishing liability under section 1983 discussed in *Iqbal* and post-*Iqbal* circuit court precedent, the Second Circuit

reversed the decision of the district court and remanded with instruction to enter summary judgment for the counselor supervisor. *Id.* at 620. In reaching this conclusion, the Second Circuit stated that "it may be said that [the counselor] could have or should have made an inference of the risk of sexual abuse . . . [b]ut there is no evidence that she made that inference [within the relevant time period.]" *Id.* at 619. Thus, the counselor could not be liable to the plaintiff.

### ii. Discussion

Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted with respect to the claims against Judge Carroll and that the proposed amended claims against Judge Sheridan would be futile for substantially similar reasons. In response to Defendant's motion to dismiss the claims against Judge Carroll, Plaintiff raises numerous arguments that fall into two categories: (1) Judge Carroll is liable as a policymaker and (2) Judge Carroll was directly involved in the delay. Though Plaintiff has not articulated her argument as to why the claims against Judge Sheridan are not futile, the Court will apply the themes of liability she has alleged in this case to determine if the proposed claims are futile.

### A. Judge Carroll; Policymaking

Plaintiff alleges that her complaint sufficiently alleges that Judge Carroll established and/or endorsed a policy to unconstitutionally discriminate against attorneys seeking readmission on the basis of their race and/or protected speech. This argument raises multiple claims. First, Plaintiff claims there is a policy within the Connecticut Judicial Branch to discriminate and/or retaliate against attorneys seeking readmission on the basis of their race and/or protected speech. In support

of this claim, Plaintiff relies on her allegations that other white attorneys have sought and received an initial SCRA hearing during the time in which Plaintiff's application was pending.  Second, Plaintiff claims the aforementioned policy was either established by or permitted to exist by Judge Carroll because Judge Carroll is the "chief policy maker" for the Connecticut Judicial Branch based on evidence such as his role as the Chief Court Administrator, his oversight over the presiding and administrative judges within the branch, and his involvement with committees such as the PSTC and the JMC.

Plaintiff's argument fails because she has not sufficiently alleged a discriminatory or retaliatory policy in which Judge Carroll enacted and/or endorsed.  Plaintiff neither states nor describes what this alleged policy is.  Plaintiff has not provided any allegations of empirical evidence supporting the existence of this policy; such as statistical evidence or examples of other minority lawyers who have been discriminated against.  Her claims of the existence of such a policy are substantially similar to the claims raised and rejected as conclusory by the Supreme Court in *Iqbal*.  This was pointed out by this Court in the decision granting Defendant's first motion to dismiss.  Plaintiff's attempts to amend the complaint to justify this absence of factual allegations fail to rectify the issue.  The additional allegations with respect to Judge Carroll's role in the Connecticut Judicial Branch, including his oversight and involvement in various committees, does not address the underlying issue, which again is whether there is such a policy of discrimination that Judge Carroll created or maintained.

The additional allegations with respect to the alleged comparators does not fill the gaps because there are insufficient allegations to show these individuals are comparators. Most of the alleged comparators are only alleged to have had a hearing before the judge panel, a step in the reinstatement process not applicable in the instant action because Plaintiff is not alleging her hearing before the judge panel was unduly delayed. Of the alleged comparators who received initial SCRA hearings during the time Plaintiff's application was pending, all were before a different SCRA than Plaintiff.[2] In addition to being before a different SCRA, Plaintiff has not alleged sufficient factual matter for the Court to determine if these individuals were comparators, particularly in light of the delay in the processing of Plaintiff's application caused by Plaintiff's own conduct. This includes the evidence that Plaintiff did not take, much less pass the MPRE, or properly seek waiver of the requirement, prior to filing her application for reinstatement, which as explained above is required. This also includes evidence that Plaintiff did not comply with the suspending court's order to designate a mentor until over 20 months after her application for reinstatement was filed. Thus, there are no comparators or other evidence of discriminatory treatment and Plaintiff's claims of racial discrimination and/or retaliation are nothing more than conclusory allegations unsupported by factual matter. It is not enough for Plaintiff to simply claim the existence of a policy where is no evidence any such policy exists. The

---

[2] *Cf. Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (holding in employment discrimination case that alleged comparators were not similarly situated in part because they had different supervisors).

mere fact that her proceedings may have been delayed is not evidence of the policy she claims exists.

However, even assuming there is some policy within the attorney disciplinary and reinstatement process, Plaintiff does not articulate Judge Carroll's direct role in establishing or maintaining this policy. Simply because Judge Carroll is the Chief Court Administrator and plays a vital role in the administration of the Connecticut Judicial Branch does not establish he creates all policies for the Judicial Branch, much less the policies taken by disciplinary authorities.

Therefore, the Court finds Plaintiff has not stated a claim with respect to Judge Carroll's liability based on the theory he established and/or endorsed a policy of racial discriminatory or retaliatory treatment.

### B. Judge Carroll; Direct Involvement

Plaintiff argues that her complaint sufficiently alleges that Judge Carroll was directly involved in the unconstitutional delay in adjudicating Plaintiff's application for reinstatement for the purpose of discriminating against her on the basis of her race and/or protected speech. Plaintiff argues that Judge Carroll's direct involvement is evidenced by his failure to act when he knew about her discriminatory/retaliatory treatment. To establish Judge Carroll's purported knowledge about the alleged unconstitutional delay in processing her reinstatement application Plaintiff cites to allegations in her complaint that: (1) Judge Carroll received a copy of her reinstatement application back in January 2020 when he referred it to the Hartford SCRA, which suggests he was put on notice of her pending application; (2) her reinstatement application that Judge Carroll

received contained a list of pending cases she had, including a case against the Connecticut Judicial Branch, suggesting he was put on notice of her claims of discrimination/retaliation against the Connecticut Judicial Branch; (3) she has filed multiple lawsuits against various Connecticut disciplinary authorities, suggesting Judge Carroll must of known about the suits because their uniqueness; (4) Judge Carroll must have known that other white attorneys were having reinstatement hearings because he received direct notice of a withdrawal by one of those attorneys after an initial hearing was scheduled; and (5) Judge Carroll must know about her claims based on the allegations from this suit.

Plaintiff argues that under *Tangreti*, knowledge of a substantial risk of harm is sufficient to allege a section 1983 claim against a supervisor.[3]  This is an inaccurate statement of the law, and even if it was accurate it fails to apply here. First, the Supreme Court clearly rejected this same argument in *Iqbal*.  556 U.S. at 677 (holding that "supervisory liability," that is liability for "knowledge and acquiescence in their subordinates'" unconstitutional conduct, is not enough to state a claim for section 1983 liability).  Second, *Tangreti*'s discussion about the

---

[3] *Tangreti* involved an alleged violation of the Eighth Amendment "on the basis that a defendant has failed to prevent a harm."  *Id.* at 618–19.  The elements of that constitutional violation required a showing of an objectively unreasonable risk of serious harm and that the defendant acted with "deliberate indifference."  *Id.* "Deliberate indifference in this context means the official must know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the indifference can be drawn that a substantial risk of serious harm exists, and he must also draw that inference."  *Id.* (citing to *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020) (internal quotation marks omitted)).  This knowledge requirement is specific to claims under the Eighth Amendment, not necessarily all constitutional violations, "because the elements of different constitutional violations vary."  *Id.* at 618.

knowledge requirement is exclusive to Eighth Amendment deliberate indifference claims, which Plaintiff is not bringing here.  As provided for in *Tangreti*, "the elements of different constitutional violations vary"; 983 F.3d at 618; and simply because knowledge of a substantial risk of harm in an Eighth Amendment claim may be sufficient, it is not necessarily sufficient to impose liability in a discrimination/retaliation case.  Plaintiff provides no authority whatsoever as to why this knowledge requirement also applies in the cause of actions she raises here.  Meaning, her claim that because Judge Carroll must have known about an alleged constitutional violation he can be liable, fails on the law.

Even assuming that knowledge was enough to impose liability on a supervisor in a discrimination/retaliation case, Plaintiff has not sufficiently alleged Judge Carroll knew that Plaintiff has been discriminated or retaliated against in the processing of the attorney reinstatement application.  The earliest event that Plaintiff claims put Judge Carroll on notice was the mere filing of her application of reinstatement back in January 2020, which as discussed above was filed prematurely because Plaintiff did not comply with the requirements for reinstatement.  Meaning, even if Judge Carroll had reason to inquire into the processing of Plaintiff's application for reinstatement, such inquiry would have resulted in the conclusion Plaintiff was not qualified for reinstatement at the time.

Plaintiff also alleges that Judge Carroll was responsible for withholding the initial reinstatement hearing as evidenced by the November 18, 2020 email from the Hartford SCRA's representative, which stated that Judge Sheridan told her "he would have to get permission" to use the remote/virtual courtroom for an attorney

reinstatement hearing, and it can be inferred the permission needed was from Judge Carroll and because a hearing was not immediately scheduled, Judge Carroll can be inferred to have withheld permission.  The inferential leap Plaintiff takes is outside the bounds of plausibility.  What Plaintiff is seeking for the Court to infer from this single email from a non-party is (1) Judge Carroll was the person from whom permission was sought, (2) someone contacted Judge Carroll seeking permission, (3) Judge Carroll was told that the remote hearing was for Plaintiff, (4) Judge Carroll denied permission, and (5) the denial of permission was on the basis of Plaintiff's race or protected speech.  This degree of inferential leaps goes well beyond the plausibility standard.

Plaintiff alleges that Judge Carroll was put on notice based on allegations raised in various lawsuits against the Connecticut Judicial Branch and disciplinary authorities, including this litigation.  While this is the best example of notice, merely filing this lawsuit did not put Judge Carroll on notice that Plaintiff was being discriminated or retaliated against where the evidence shows the delay in the processing of her reinstatement is due to a combination of her failure to comply with the requirements for reinstatement and the COVID-19 pandemic.  Plaintiff's case as a whole is premised on the position that she has been discriminated against on the basis of her race and/or protected speech by the disciplinary authorities and/or the Superior Court.  The complaint does not even sufficiently allege she has been discriminated against.  As discussed above, the delay in adjudicating her application for reinstatement on its face appears due in part to her failure to timely comply with the MPRE and mentorship designation requirements.

The email exchanges in November and December 2020 do not support an inference of discrimination against Plaintiff.  The emails assert that the delay is not specific to Plaintiff individually, but is the cause of COVID-19 delays, staff shortages, and access to virtual meeting spaces not originally designated for this purpose.  There is nothing in these emails or the other pre-suit conduct by the disciplinary authorities that support an inference of discriminatory purpose.  Meaning, the complaint fails to sufficiently allege that Judge Carroll had knowledge of her alleged discriminatory and/or retaliatory treatment because there is not enough to show she has been discriminated and/or retaliated against.

Therefore, the Court finds Plaintiff has failed to state a claim upon which relief can be granted against Judge Carroll.

### C.  Judge Sheridan

Plaintiff's proposed amended complaint seeks to raise the same causes of action against Judge Sheridan as raised against Judge Carroll.  Plaintiff raises the following allegations against Judge Sheridan.  First, Plaintiff alleges that Judge Sheridan was at all material times the policymaker and decision maker involving attorney discipline in the Hartford Judicial District.  [Proposed FAC ¶¶ 6, 24].  Second, Plaintiff alleges Judge Sheridan established and maintained a policy of (1) providing procedural due process rights of notice in a nominal sense only with regard to the Hartford Judicial District, (2) arbitrary and capricious discipline of attorneys and application of rules regarding re-admission to the practice of law after discipline in the Hartford Judicial District, and (3) racially discriminatory treatment of attorneys in the application of rules regarding re-admission to the

practice of law after discipline in the Hartford Judicial District.  [*Id.* ¶¶ 32–34]. Lastly, Plaintiff alleges that Judge Sheridan presided over fourteen hearings involving readmission of other white attorneys, while he claimed to need permission to allow the Hartford Standing Committee to use the remote courtroom for Plaintiff's initial reinstatement hearing.  [*Id.* ¶¶ 68, 70].

Defendant opposed the motion to amend arguing, *inter alia*, that the proposed claims against Judge Sheridan would be futile.  Defendant argues that the injunctive relief claims should be dismissed because they are moot (due to Plaintiff having an initial SCRA hearing prior to the filing of the motion to amend) and barred for the same reasons the Court denied Plaintiff's first effort in seeking injunctive relief against Judge Carroll.  Defendant argues the proposed monetary damages claims are also futile because Plaintiff has failed to set forth nonconclusory allegations with respect to Judge Sheridan's direct involvement. Lastly, Defendant argues the proposed claims are futile because Judge Sheridan would be entitled to qualified immunity.  Plaintiff does not directly address Defendant's arguments with respect to futility in her reply.

The Court finds that the Plaintiff's proposed claims against Judge Sheridan are futile.  The injunctive relief claims would fail for the same reasons they failed against Judge Carroll, which Plaintiff does not dispute.  *See supra.*  The monetary damages claims also fail because Plaintiff's policymaker claims are all conclusory and thus are not entitled to the assumption of truth.  *See supra*.  The only claims of direct involvement stem from (1) the single email from a representative of the Hartford SCRA and (2) the judge panel hearings Judge Sheridan presided over

while Plaintiff's initial SCRA hearing had not yet taken place.  As addressed fully above, the inferential leap Plaintiff seeks to draw from the single email from the Hartford SCRA representative to establish Judge Sheridan's direct involvement is outside the "well-pled complaint" requirement.  Plaintiff seeks for the Court to infer from a single email by a non-party that (1) Judge Sheridan was actually contacted by the Hartford SCRA about using the court's remote courtroom, (2) Judge Sheridan was told the use was for Plaintiff, (3) Judge Sheridan had authority to grant the Hartford SCRA permission to use the remote courtroom for attorney reinstatement hearings, (4) Judge Sheridan refused to give permission, and (5) that refusal was on the basis of Plaintiff's race and/or protected speech.  This line of inference is beyond the plausibility standard.

In addition, the allegations that Judge Sheridan conducted judge panel hearings for white attorneys while Plaintiff's application was pending before the SCRA does not fill in the gaps.  As explained above, those attorneys seeking readmission were at a different step in their reinstatement process than Plaintiff and are not comparators.  The hearings before the judge panels are judicial hearings in that they are before three Judges of the Superior Court.  The hearings before the SCRA are non-judicial, which Plaintiff recognizes in her complaint.  The fact that the remote courtroom was used for judicial proceedings before Judge Sheridan and not for non-judicial hearing for Plaintiff does not tend to support an inference of discrimination.   In addition, there is nothing to suggest Judge Sheridan was made aware of Plaintiff's pending application and the process unfolding before the Hartford SCRA.

Therefore, the Court finds that Plaintiff's proposed claims against Judge Sheridan would be futile and thus the motion to amend is denied.

## IV.    CONCLUSION

For the above reasons, the Court grants Defendant's motion to dismiss and denies Plaintiff's motions to amend.  The case is dismissed with prejudice.  The Clerk is directed to close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: March 28, 2022